UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x
                                 :
UNITED STATES OF AMERICA         :   No. 3:17CR220(JAM)
                                 :
            v.                   :
                                 :
ANDRE FLOTRON,                   :
                                 :   New Haven, Connecticut
                 Defendant       :   November 6, 2017
                                 :
- - - - - - - - - - - - - - - - x


TELEPHONIC STATUS CONFERENCE


        BEFORE:

           THE HONORABLE JEFFREY ALKER MEYER, U.S.D.J.


APPEARANCES:


        FOR THE GOVERNMENT:

              OFFICE OF THE UNITED STATES ATTORNEY
                   157 Church Street, 25th Floor
                   New Haven, Connecticut 06510
              BY:  JONATHAN N. FRANCIS, AUSA


        FOR THE DEFENDANT:

              GREENBERG TRAURIG LLP
                   MetLife Building
                   200 Park Avenue
                   New York, New York 10166
              BY:  MARC L. MUKASEY, ESQ.
                   NATHAN J. MUYSKENS, ESQ.


                              Diana Huntington, RDR, CRR
                              Official Court Reporter

1                          **5:01 P.M.**

2              THE COURT:  Good afternoon.  This is Judge

3    Jeffrey Meyer.  We're here for a status conference in

4    USA v. Flotron.

5              May I have appearance of counsel for government,

6    please?

7              MR. FRANCIS:  Good afternoon, Your Honor.  This

8    is Jonathan Francis for the government.

9              THE COURT:  And for Mr. Flotron?

10             MR. MUKASEY:  Hi, Judge.  It's Mark Mukasey from

11   the law firm Greenberg Traurig for the defendant Andre

12   Flotron who is also on the phone with us.

13             THE COURT:  Great.

14             Anyone else on the phone?  Okay.

15             I just wanted to get back with you in light of

16   our last status conference just to check up on scheduling,

17   if you anticipated anything there.  I also wanted to

18   quickly cover --

19             (Telephone interruption.)

20             THE COURT:  Whoops.  I'm sorry, who just joined?

21             MR. MUYSKENS:  This is Nathan Muyskens from

22   Greenberg Traurig.  I apologize.

23             THE COURT:  Then the next item I'd take up is

24   the government's motion for an order authorizing

25   compliance with Justice For All Act, which I had granted

1    on the assumption that there wouldn't be an objection, but

2    if there is an objection, I'm certainly willing to

3    reconsider that.

4         And then if there's other issues to take up at

5    this point, glad to hear from the parties.

6         So maybe I'll take the second issue first on the

7    motion for an order authorizing compliance with the

8    Justice For All Act.

9         Mr. Mukasey, do you have a concern about that

10   motion?

11        MR. MUKASEY:  I have a concern.  I do not want

12   to be in the position of stopping the government from its

13   statutory obligations to notify victims.  However, this is

14   a case that I believe the government has brought

15   prematurely without knowing exactly who its victims are or

16   whether it has any victims.  If you look at some of the

17   cases that use publication on the justice website to

18   notify victims of the proceedings, they're cases like the

19   Stanford Ponzi scheme that had thousands upon thousands of

20   victims and U.S. v. Bernie Madoff which had thousands and

21   thousands of victims, not cases where discreet trades are

22   going to be charged as allegedly fraudulent trades.

23        And one of the reasons for my concern here, it's

24   not just that the government may be using website

25   publication as a fishing net to go find people with

1  complaints, but -- and I think Mr. Francis will agree with

2  this -- the government has not yet determined what trades

3  it's going to charge.  We know the superseding indictment

4  is coming.  We know there are going to be overt acts added

5  to the conspiracy charge.  We know, or at least we

6  anticipate, that some of those overt acts will also be

7  substantive counts.  And this will dovetail a little bit

8  to the trial date issue.

9          We're ready to go to trial as soon as we can

10  review discovery.  And assuming that there is a manageable

11  number of trades that we can review, we're ready to go

12  first week of April, first week of May, first week of

13  June, whenever the Court can accommodate us.  But it seems

14  to me the government is looking for victims and looking

15  for complainants, if you will, and therefore doesn't

16  know -- and Mr. Francis and Mr. Rinaldi and I have

17  discussed this -- they don't know how big this case is

18  going to be, they don't know how many substantive counts

19  they're going to superseding in, they don't know how many

20  trades or overt acts they're going to supersede in.  So I

21  view these issues as somewhat connected.  I can't really

22  pick a trial date if I don't know how big this case is

23  going to be.  And I don't think they know how big it's

24  going to be, and that's why they want to fish for victims

25  on the websites.

1           I don't offer this in the sense of I think the

2    government is doing something underhanded.  I just think I

3    have a right to a speedy trial with identifiable victims.

4    And I'd like to go to trial as fast as possible at a time

5    that allows me to review the discovery and then pick the

6    jury, but I don't think the government knows the size of

7    its own case or its own victims.

8           So I guess I can throw it to Mr. Francis and he

9    can be heard on it.

10          THE COURT:  Okay, thank you.

11          Mr. Francis.

12          MR. FRANCIS:  Thank you, Your Honor.

13          So if we just take up the issue about

14    notification of victims, I don't necessarily understand

15    the concern about fishing for victims.  The government

16    would be entitled to reach out to the world and find as

17    many victims as we wanted.  I think our motion, what it

18    seeks is the Court's blessing, an order allowing us to

19    treat the notification to the website as sufficient for

20    statutory purposes.  But clearly the government can go to

21    great lengths or any lengths it wants as far as

22    investigation to find victims.

23          As a matter of fact, we have located victims of

24    certain trades, but the problem is our evidence and our

25    investigation is showing that this conduct that's being

1   charged as spoofing, it was going on a lot.  And so there

2   are a number of trades, probably a large number of trades

3   and a large number of victims who will never be part of

4   the government's case but have statutory rights, including

5   to notification.  And it would not be practicable for the

6   government to try to go through all of Mr. Flotron's

7   trading records and identify every single person who was

8   directly affected by spoofing or commodities fraud or wire

9   fraud, however it's charged.  And so that's why we made

10  the motion.

11          I didn't think it would be controversial.  I was

12  a little surprised.  I can separately address the issues

13  as it pertains to scheduling if Your Honor --

14          THE COURT:  Let me make sure I'm understanding

15  Mr. Mukasey's concern a little bit here.

16          It seems to me there's two concerns that you

17  have.  The first is you're concerned about the government

18  essentially making what are basically public statements

19  about this case in a way that might lead to more people

20  identifying themselves as victims and then possibly that,

21  in turn, somehow expanding the evidence in the criminal

22  case that would be presented by the government; is that

23  the concern?

24          MR. MUKASEY:  Yes, I think if you're going to

25  bring a case and we're going to pick a trial date, you

1   ought to know who your victims are now and notify them.

2   There may be tens of millions of other people who have

3   concerns about the case and there may not be.  But they've

4   brought a case, so far they've mentioned three trades in

5   the complaint and one in the indictment.  That's who they

6   have to notify.  Casting a wide net to try to figure out

7   who else might be a victim does not seem to me to be the

8   purpose of the notification statute.

9            THE COURT:  I see.

10           Although wouldn't the government ordinarily have

11   the right, subject to limitations on saying information

12   that could be prejudicial or prejudice the potential jury

13   pool, doesn't the government have the right to publicize

14   the fact of its prosecution and that may ordinarily result

15   in people coming forward?  And if they do, then wouldn't

16   it be a question at that point in time whether you had not

17   received fair notice?

18           MR. MUKASEY:  Look, I don't want to make a

19   mountain out of a molehill here.  The issue I'm really

20   getting at is I don't think this is a case with thousands

21   of victims the way a ponzi scheme case is.  This is a case

22   with identifiable trades and identifiable counterparties.

23   And if the government can't figure out which trades it

24   wants to charge, it shouldn't have brought the case.

25           Now, if they want to contact the identifiable

1   victims, they should do it in a conventional manner as

2   opposed to advertising on the internet for victims to come

3   forward.

4           But, Judge, if you want to grant this, I'm

5   actually not really going to fight that much about it.  I

6   just think it's not the kind of case that's meant for

7   website publications.  And I think they got a little far

8   over their scheme and now need to figure out what to

9   charge.  And we've actually asked Mr. Rinaldi, the DOJ

10  lawyer on the case, can you please tell us in advance of

11  this conference how long -- when the superseder's coming

12  and how many trades it's going to charge and how many

13  different dates and how much data is going to be

14  associated with those trades; and his answer is, "I can't

15  commit to you, I don't know."  In other words, I think

16  they're looking for victims.  And you know, I don't think

17  they should have brought a case where they didn't know

18  what the proof is going to look like at trial.

19          It's hard for me to pick a trial date, even

20  though I'm ready to, I will.  It's hard for me to pick a

21  trial date if they don't know who their victims are

22  because they don't know what trades they're charging.

23          THE COURT:  Okay.  I think I understand the

24  concern.

25          Mr. Francis, help me out on the trial date

1    issue.  I think I said this when we got together in

2    person.  My interest would be in trying to set a realistic

3    trial date that would not move.  And I don't think that

4    the government has a free hand to essentially keep

5    superseding on the brink of trial and to upset that trial

6    date schedule.

7              So have you thought about what is a realistic

8    trial date in light of any intentions that the government

9    has with respect to superseding?

10             MR. FRANCIS:  We have, Your Honor.

11             It's not our intention to supersede on the brink

12   of trial.  We have no interest in moving the trial date

13   once it's set.

14             We anticipate we will supersede really -- we

15   would like to supersede in December, but frankly it's just

16   a question of scheduling with the grand jury.  If we're

17   not able to get in towards the end of December, then

18   certainly we believe by January.

19             As we said when we were together in person, we

20   don't actually think superseding changes the shape of this

21   trial at all.  Whether we proceeded on this indictment or

22   the superseder that we're working towards, we think the

23   trial will likely be the same.  Either way, it will charge

24   a scheme.  And maybe there might be some specified

25   allegations about what are the instances of that scheme

1    being executed, but either way, the evidence will be the

2    same, the discovery will be the same, the theory of the

3    case will be the same.

4         And so we offered to Mr. Mukasey a series of

5    dates.  We're available to move forward in February or

6    March with the trial.  We understood that might be too

7    fast, and we have no interest in rushing the defense.  If

8    that's too quickly, that's too quickly, or that's moving

9    too quickly, that's moving too quickly.  I don't think

10   Mr. Mukasey and Mr. Flotron were interested in that,

11   although I won't speak for them.

12        And so I have a trial that begins before Judge

13   Thompson in April that Judge Thompson has down for four

14   weeks.  That will take us through the third week in May.

15   My hesitation about scheduling a trial for June is that I

16   would like time to prepare so that our case goes in

17   efficiently, smoothly and there's not a ragged

18   presentation of the government's case.  And so we would

19   ask for a July trial date.  We think that's reasonable.

20        Frankly, we've produced a lot of data to the

21   defense.  And it's new to them.  I don't say this at all

22   in a critical way, I don't believe they yet realize how

23   much data we've already given them.  And my experience in

24   these sorts of cases is that information can take quite a

25   while to process, if they're interested in doing it that

1    way.  If not, then I suppose that's their decision.  But

2    in another case we had with Mr. Mukasey, my office had

3    with Mr. Mukasey, similar, there was a very large number

4    of communications and data turned over.  And it took quite

5    a long time for that all to be processed and then it was

6    used at the trial.

7              In this case we've had discussions about the

8    discovery that the defense is seeking, and we've made I

9    believe three or four substantive productions so far.  And

10   so far there's no disputes.  So that's good.  We're

11   working cooperatively towards what they want from us.

12   Clearly there's a very, very large pool of data and

13   information the government has, and we have no interest in

14   just dumping it all on the defense and then having them

15   ask for a trial in 2019.  We're asking for a July trial

16   date.  We think that's realistic, but --

17             THE COURT:  And remind me one more time, your

18   trial dates with Judge Thompson are when?

19             MR. FRANCIS:  Sure.  It is -- I'm sorry, Judge,

20   just let me pull up my calendar.

21             THE COURT:  Sure.

22             MR. FRANCIS:  We pick a jury on April 17th in

23   that case.  And then we go to trial starting on the 23rd.

24   And I called chambers and Judge Thompson has it down for

25   four weeks, which was my understanding of what the defense

1    counsel was envisioning.

2            I think this case is, I mean, a two- to

3    three-week case at the outside regardless of the

4    superseder.  We're clearly not going to bring all the

5    evidence we could.  Mr. Mukasey keeps saying we haven't

6    found our victims.  That is not really the issue.  It's

7    more of an embarrassment of riches.  We have to decide

8    which of the spoofing trades that we believe are

9    fraudulent are going to be our evidence.  We're not going

10   to attempt to bring them all in, but we need to make

11   decisions.  And there are many, many to choose from.

12           But we won't try and stretch the trial or have a

13   parade of victims or any of those things that seem to be a

14   concern with the motion for notification.  We'll pick some

15   trades, we'll charge those, we'll put the defense on

16   notice of what trades we intend to offer, if there are any

17   that are not charged as substantive counts as part of the

18   scheme, and that will be our case.  That will be the sort

19   of universe of victims that we would anticipate would

20   testify.

21           THE COURT:  I see.  Okay.

22           And you say that Judge Thompson has set the

23   matter down for a four-week trial.  Is that what the

24   government is estimating?

25           MR. FRANCIS:  We thought our case in that

1    case -- in that other case, it's an RMBS case which

2    Mr. Mukasey has had experience with our office before

3    Judge Chatigny in another case.  We had it down for two to

4    three weeks and the defense said they felt their case was

5    two weeks.  So basically what they said before Judge

6    Thompson was they thought it was a four-week trial.

7    They've noticed two experts or they've given us notice

8    that they will notice two experts.  And while I've had

9    some experience with these trials, these RMBF cases, the

10   government's case typically takes a week or so.  So while

11   I can't say that I think it will take exactly four weeks,

12   I think three to four weeks, if the defense is going to

13   put on a case, which they have said that they're

14   interested in doing with experts, I think that's probably

15   realistic.  I think I will be occupied until the end of

16   May.

17              THE COURT:  I see.  Okay.

18              Mr. Mukasey.

19              MR. MUKASEY:  Thank you.

20              Well, obviously I can't prepare for a trial if

21   the government hasn't picked out which trades it's going

22   to charge from its embarrassment of riches.  And I would

23   like, if possible, to avoid bill of particulars motion

24   practice.

25              And it is true that in the other trial that I

1    had with Mr. Francis and his colleague, they did let us

2    know what trades they were going to prove up at trial,

3    what trades they thought were part of the scheme and part

4    of the substantive counts.  So as soon as they let me know

5    whether that's going to be five trades, ten trades, 50

6    trades or 100 trades, I would better be able to tell how

7    long it will take me to prepare for trial.  If that's not

8    going to be in until January, I obviously can't go to

9    trial in a case of this complexity and size in March.

10   However, assuming the case is of a manageable size, like

11   the trial we had in front of Judge Chatigny, the RMBS

12   case, assuming 10, 12 trades, five, seven, eight, ten, 12

13   trades and it's manageable, we would love to go to trial

14   in the spring of 2018, and that means middle of April,

15   middle of May, middle of June.

16          Now, I realize that that does not correspond

17   with Mr. Francis's personal schedule.  I would remind the

18   Court there were two lawyers from the Fraud Section in

19   Washington on this case, and I don't think this case

20   requires more than two assistants to try.  And, you know,

21   there are 54 other highly qualified assistants in

22   Connecticut.  And I know that when I joined the U.S.

23   Attorney's Office, and I'm sure when you guys did too, you

24   know, it was the dream of every young assistant to have

25   Jon Francis walk into their office and say, "Sorry, I have

1   a case in front of Judge Thompson, can you handle this

2   trial in front of Judge Meyer?"  You know, I don't think

3   Mr. Francis is the key to this.  This case is generated

4   out of Washington by the Washington lawyers.  They have

5   the history with it.  They have the background in it.

6   They generated it.  And I don't think my client's speedy

7   trial rights should be held hostage to Mr. Francis's

8   obligations in another case.

9              THE COURT:  I see.  Okay.

10             MR. FRANCIS:  Your Honor, may I be heard?

11             THE COURT:  Yes, certainly.

12             MR. FRANCIS:  So there are many effective

13  prosecutors in my office.  I'm not sure whether or not

14  they would be excited if I were to drop a case on them,

15  but they exist.  I'm the only prosecutor in Connecticut

16  who has worked on this matter.  The case has been handled

17  by the Fraud Section for longer than in our district, but

18  I'm also the only prosecutor in Connecticut -- I mean,

19  this is the second spoofing case that will go to trial in

20  the country.  And I've been working with the Fraud Section

21  for I believe over a year towards bringing spoofing cases,

22  including this one.  So I have a history with the case.

23  The government has an interest in continuity of counsel;

24  it's not the same as the defense's interest in continuity

25  of counsel, we understand that.

1          But because we're talking about the difference

2     between June and July, I think it's in everyone's interest

3     for the case to go in smoothly, regardless of who is

4     winning and who is losing.  I don't think it's in anyone's

5     interest for there to be inefficient presentation of the

6     evidence.  I submit that I think that might go a little

7     better if the prosecutor with the most experience with the

8     case is available to do that and had time to prepare.  And

9     I'm asking your indulgence.

10          I understand Mr. Mukasey's position.  We've

11     discussed this.  There's no animosity between us.  We've

12     had scheduling issues in our prior case before and we've

13     worked through them effectively.  I don't think this is

14     anyone going to the mattresses over this.  I'm asking the

15     Court for what I believe is a three-week extension on the

16     trial date.  I don't think the defendant's speedy trial

17     rights are meaningfully or drastically impacted by that

18     short amount of time.  This is all on the assumption,

19     Your Honor, that the Court is available to try the case on

20     these dates.  I'm sorry, I'm not aware of Your Honor's

21     schedule.

22          THE COURT:  Sure, sure.

23          I understand, Mr. Mukasey, you were looking to

24     start in April if you could.

25          MR. MUKASEY:  Again, I don't know what I'm

1    looking at in terms of the size of the case, the number of

2    trades that are going to be proved up.  But assuming --

3    and this is just based on my experience with the

4    Connecticut office in this last trial, assuming that it is

5    a manageable amount, ten or twelve trades or a bit more, a

6    bit less, we would go, you know, first week of May, second

7    week of May, third week of May, end of April, and any time

8    in June.  I know Mr. Francis has a vacation built into

9    this scheduling.

10              MR. FRANCIS:  I'm sorry, Your Honor, that's not

11   accurate.

12              MR. MUKASEY:  Sorry, my misunderstanding.  I

13   guess there's time between the end of the April trial and

14   June that he's unavailable.  I just think if the case is

15   really only going to be two weeks long or the government's

16   case is only going to be about two weeks long and there's

17   a manageable number of trades and things aren't going to

18   change all that drastically other than identifying the

19   various spoof trades that the government picks out, I

20   don't see why we have to wait, you know, over half a year.

21              THE COURT:  I see.

22              MR. MUKASEY:  And there are 20,000 assistants in

23   the country available to try the case.  Maybe not as

24   beautifully as Mr. Francis, but certainly, you know,

25   enough to get the job done.

1            MR. FRANCIS:  Your Honor, the way I came at this

2   July date, based my experience, is it takes about a month

3   to prepare a case like this.  There's victims to be flown

4   in, to be prepped, and people to be spoken with.  It's a

5   document-intensive case, document issues to be worked out.

6   So my experience is it takes about a month.  I didn't

7   think we would want to start a trial right before July 4th

8   because breaking up a trial like that tends to make it

9   harder to pick a jury.  And I wasn't sure about anyone's

10  vacation plans, so I figured July 9th.

11            MR. MUKASEY:  I'll tell you, I want to remind

12  the Court, briefly, my client is on house arrest with an

13  ankle bracelet confined to his girlfriend's home largely

14  other than lawyer visits and medical visits and church

15  visits and is, you know, locked down by Pretrial Services.

16  We're happy that we reached a bail agreement, but we'd

17  like to have this case heard as soon as we can.

18            THE COURT:  So I do share the concerns for the

19  speedy trial here.  And I understand -- it's regrettable,

20  Mr. Francis, that you have that conflict of trial

21  schedules, but I do know that there are other AUSAs who

22  would be able to try the case.  And so I'm going to aim to

23  start the trial in April, on my jury selection day in

24  April, which is Friday, the 6th of April.  And the other

25  dates that the parties have been talking about in May, and

1    I've been looking at the calendar as you've been speaking,

2    particularly in May and July pose their own problems with

3    the Court's own schedule.  So I do think it's possible to

4    try the case in April.  And it's not too much to ask for

5    the government to be ready to proceed by that day.  So

6    I'll set the case down for jury selection Friday, April 6,

7    with evidence beginning on the 9th.  And I'll block out

8    the next three-week period on the Court's calendar for

9    that purpose.

10          That's going to be with the understanding that

11   the government is not going to wait more than the month,

12   not going to supersede later than the month of January, as

13   promised.  And I think that Mr. Mukasey understands that

14   you're going to see a superseding indictment, but that I

15   understand the government's representations to be it's

16   going to be substantially similar to what's been filed so

17   far.  And so I have to trust the government's going to

18   ensure that it is giving advance notice of the expected

19   transactions that will be the subject of proof at trial,

20   whether they actually are formally charged and itemized as

21   distinct counts or overt acts or whether they're going to

22   be essentially just evidence of the scheme, I'd like the

23   government to be focused on doing that.

24          In the event that the parties are -- in fact,

25   we'll set another conference call, status conference

1    30 days from now for the parties to report back on the

2    status of discovery to see if there are going to be

3    concerns about the scope of disclosure and the ability of

4    the parties to be prepared to go.

5           And Mr. Francis, I regret that it poses this

6    conflict for you, but I do think my primary concern has to

7    be with the right of the defendant to a fair and speedy

8    trial.  And I do think and trust, from long experience,

9    that the U.S. Attorney's Office and Department of Justice

10   is capable of finding people and other attorneys to try

11   the case in the event that your trial in April goes

12   forward with Judge Thompson.

13          MR. FRANCIS:  Thank you, Your Honor.  Appreciate

14   you saying that.  Of course the government's going to be

15   prepared and, if possible, I'll try the case.  If not,

16   someone else will be there ready to go.

17          If I may, Your Honor, my proposal -- I

18   understand why Your Honor is focused on making sure the

19   defense has notice of what our evidence is going to be

20   like.  It makes a huge difference in making the trial move

21   more quickly, as Mr. Mukasey knows.  So my proposal would

22   be after we indict the case, some period of time

23   afterwards, I would suggest that we just set a date where

24   we notify the defense, we can build it into the calendar,

25   of what the government's scheme evidence would be.  It's

1    not 404(b) because it's part of a charged scheme, but it

2    would be sort of what the government's trial evidence, if

3    there are any trades other than those charged.  We've done

4    that in the RMBF cases that have some similarities to this

5    case and that's worked well with Judge Hall and before

6    Judge Chatigny.  That's my suggestion for how to deal with

7    that issue.

8              THE COURT:  That's standard.  But if you know

9    trades now at this point in time, they should be --

10             MR. FRANCIS:  Oh, Your Honor, I'm sorry if I

11   gave that impression.  I don't think we do, but if I find

12   out that that's not the case, of course we'll make sure

13   the defense has everything and they know that we're going

14   to use them at trial.

15             THE COURT:  Okay.

16             The last time we got together we spoke a bit

17   about the discovery.  And has that changed in terms of the

18   prosecution's initial disclosures?  We talked about some

19   limitations on that.

20             MR. FRANCIS:  It has, Your Honor.  Because we

21   understand the defendant is interested in moving towards a

22   trial -- we had suggested sort of having a two-tier

23   approach where we held back 302s.  Since that no longer

24   seems to be in play, we started producing 302s to the

25   defendant.

1          My understanding of how we've handled this is we

2    produced everything that the defense has asked for or

3    substantially everything we have that's related to

4    Mr. Flotron, including data and communications.  We've

5    included in our discovery where it even extends beyond

6    Mr. Flotron, for instance, information related to the

7    cooperator or those who the cooperator has conspired with.

8    And we are in the process of checking -- we produced all

9    the substantive 302s that deal with Mr. Flotron in the

10   charged scheme.  But we're in the process of checking all

11   the 302s that could potentially be related to Mr. Flotron

12   just to see if his name or the name of any related, the

13   cooperator, people like that, are even mentioned.  While

14   we don't think any of it would pose Brady or Giglio or any

15   issues like that, we're doing it out of abundance of

16   caution.  That's where we are at with discovery.

17         I called Mr. Mukasey earlier today just to check

18   to make sure there are no disputes currently, and that's

19   my understanding.

20         THE COURT:  Mr. Mukasey.

21         MR. MUKASEY:  Your Honor, there are no disputes.

22   We have received I think three productions totaling over

23   100 gigabytes of information, including Excel files and

24   data and 302s.  So right now we're sitting on a giant

25   haystack of discovery.

1          And as Mr. Francis mentioned, the real

2    preparation and the real beginning to understand the case

3    is when the government identifies the needles in those

4    haystacks.  And that is the trades that constitute parts

5    of the scheme, the trades they'll prove up at trial, the

6    trades that are going to be charged substantively or as

7    overt acts.  My understanding is they haven't determined

8    that yet, so we are sitting on the haystack and just

9    waiting to hear where the needles are.

10          Generally, and Mr. Francis is right, in the last

11   case that I tried against his office, there were thousands

12   and thousands and thousands of trades.  And working

13   cooperatively, we were able to winnow it down to the

14   universe of trades that were going to be discussed at

15   trial.  And if we have an April trial date, I hope that we

16   can get identification of those trades that will play a

17   role in the trial as soon as possible.

18          MR. FRANCIS:  Your Honor, there's one

19   significant difference here.  That prior trial dealt with

20   trades that were negotiated, so the communications and

21   identifying the significant communications that were

22   relevant to those trades was important in winnowing it

23   down.  Mr. Flotron's trading, it's just a function of

24   looking at the data.

25          I'll say, I think the defense should be careful,

1  now that it got what it wanted as far as scheduling, if it

2  wants to be in a position to move forward with a trial in

3  April and not have to come back to Your Honor and ask for

4  a continuance, the data that they already have is

5  sufficient to locate the spoofing trades and the spoofing

6  conduct or the evidence that -- the sort of evidence that

7  we're going to use.  While we may call out specific

8  instances as we did with overt acts in the specific

9  indictment, there's already plenty that they could be

10  doing that they could analyze that data for the telltale

11  signs of spoofing that involve no communications.  These

12  are not negotiated trades.  It's all being done through an

13  exchange.  They have that information.  And they don't

14  need us to identify needles in a haystack.  It's a

15  haystack made -- it's a needle stack.  It's all needles or

16  at least some significant portion of it.  There's no

17  reason why they need to wait for us to identify anything.

18          However, we will identify it for them, so that

19  the ones that we're going to use perhaps as the cleanest

20  examples or obvious examples or even just timely examples,

21  but that work can begin, and I had understood that they

22  understood that.  We'd have a meet-and-confer where we

23  talked about the way this data, the -- I'll say

24  challenges, the possibilities that this data affords them.

25          THE COURT:  Okay.

1          MR. MUKASEY:  We certainly understand that,

2     Judge.  I'm trying to avoid a bill of particulars motion.

3     But if I have to do that to figure out which trades

4     they're talking about, I'll file a bill of particulars

5     motion.

6          THE COURT:  All right.

7          So what I'll do now is plan to have another

8     status conference on the 4th of December.  Do the parties

9     prefer to do that by telephone or in person?

10          MR. FRANCIS:  I'll defer to Mr. Mukasey.  The

11     government's happy to do it in person.

12          MR. MUKASEY:  I would like to see you and I'd

13     like to see Mr. Francis or his replacement, so let's do it

14     in person.

15          THE COURT:  Let's do it in person on the 4th of

16     December at 3:00 p.m.

17          MR. MUKASEY:  You're on.  Thank you.

18          THE COURT:  And hopefully we'll have updates on

19     all the issues we've been discussing.

20          Is there anything else to take up at this time?

21          MR. FRANCIS:  Nothing from the government,

22     Your Honor.

23          THE COURT:  All right.  Thank you all.  Take

24     care.

25               (Proceedings adjourned at 5:39 p.m.)

1

2                          C E R T I F I C A T E

3

4          RE: UNITED STATES OF AMERICA v. ANDRE FLOTRON

5                        No. 3:17CR220(JAM)

6

7               I, Diana Huntington, RDR, CRR, Official Court

8    Reporter for the United States District Court for the

9    District of Connecticut, do hereby certify that the

10   foregoing pages 1 through 25 are a true and accurate

11   transcription of my shorthand notes taken in the

12   aforementioned matter to the best of my skill and ability.

13

14

15

16

17                    _____
                              /s/

18                    DIANA HUNTINGTON, RDR, CRR
                        Official Court Reporter
19                   United States District Court
                       141 Church Street, Room 147
20                   New Haven, Connecticut 06510
                            (860) 463-3180
21

22

23

24

25