UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

N-16-2

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:17CR220(JAM) |
| v. | : | VIOLATIONS: |
| ANDRE FLOTRON | : | 18 U.S.C. § 1349 (Conspiracy to Commit Commodities Fraud) |
| | : | 18 U.S.C. § 1348 (Commodities Fraud) |
| | : | 7 U.S.C. §§ 6c(a)(5)(C) and 13(a)(2) (Spoofing) |
| | : | 18 U.S.C. § 2 (Aiding and Abetting) |

FILED 2018 JAN 30 A 11: 55 U.S. DISTRICT COURT NEW HAVEN, CT.

SUPERSEDING INDICTMENT

The Grand Jury charges that at all times relevant to this Superseding Indictment:

The Defendant

1.   Defendant ANDRE FLOTRON was employed as a precious metals trader at UBS AG ("UBS"), or its predecessor or affiliate.

2.   UBS was one of the largest global banking and financial services companies in the world. UBS had operations in the United States, elsewhere in the Americas, Europe, Asia-Pacific, and other locations. UBS operated a global commodities trading business that included the trading of precious metals futures contracts. Precious metals futures contracts are futures contracts for the delivery of gold, silver, platinum, and palladium. UBS's primary precious metals futures trading

desks were located in: (i) Stamford, Connecticut; (ii) Zurich, Switzerland; and (iii) Singapore.

3. FLOTRON worked on UBS's Stamford precious metals trading desk before moving to its Zurich precious metals trading desk.

4. UBS provided its futures traders, including FLOTRON, with automated trading software that had the ability to communicate with markets quickly and to place, modify, and cancel multiple orders nearly simultaneously.
Precious Metals Futures Trading

5. A futures contract is a standardized, legally binding agreement that, once executed, obligates the parties to the contract to buy or to sell a specific product or financial instrument in the future. That is, the buyer and seller of a futures contract agree on a price today for a product or financial instrument to be delivered (by the seller), in exchange for money (to be provided by the buyer), on a future date. Futures contracts trade on set, periodic expiration cycles, such as monthly or quarterly.

6. Futures contracts traded on designated markets are regulated by the United States Commodity Futures Trading Commission ("CFTC").

7. The CME Group Inc. ("CME Group") was a commodities marketplace made up of several exchanges, including the Commodity Exchange, Inc. ("COMEX"), where precious metals futures contracts trade. COMEX was a registered entity, as defined in Title 7, United States Code, Section 1a(40), and subject to regulation by the CFTC. Market participants trading on COMEX were subject to its rules.

8.  COMEX uses the "Globex" global electronic trading platform, which allows market participants to trade futures contracts from virtually anywhere in the world. Traders using Globex can place orders in the form of "bids" to buy or "offers" to sell one or more futures contracts at various prices, or "levels." Globex uses an "order book" that displays anonymous orders either to buy or to sell futures contracts. An order is "filled" or "executed" when a buyer's bid price and a seller's offer price match.

9.  A precious metals futures trader can defraud market participants by bidding to buy or offering to sell precious metals futures contracts with the intent, at the time the bid or offer is placed, to cancel the bid or offer before it is executed.

10. Such a practice can be used to defraud market participants trading precious metals futures contracts in the following way, among others:

a.  A trader places one or more large orders either to buy or to sell certain futures contracts which the trader intends to cancel before they are executed (the "Trick Orders"). To drive prices up, the trader places Trick Orders to buy, which create the false impression in the market of increased demand. To drive prices down, the trader places Trick Orders to sell, which create the false impression in the market of increased supply.

b.  In conjunction with the Trick Orders, the same trader also places, on the opposite side of the market, one or more orders in a much lower quantity that the trader actually intends to execute (the "Genuine Orders").

  c. Other market participants react to the false impression created by the Trick Orders by offering to buy or to sell at prices, quantities, and at times that they otherwise would not. This, in turn, often causes the market price of a given futures contract to rise or to fall.

  d. When the market price changes as a result of the Trick Orders in a manner, and to a degree, that the trader intends, the trader's Genuine Orders are often filled at favorable prices, quantities, and at times that otherwise would not have been available, but for the Trick Orders.

## COUNT ONE
(Conspiracy to Commit Commodities Fraud)

11. The allegations set forth in paragraphs 1 through 10 are hereby re-alleged and incorporated by reference as though set forth in full herein.

12. Beginning in approximately July 2008 and continuing through approximately November 2013, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, the defendant FLOTRON, and others known and unknown to the Grand Jury, did unlawfully, knowingly, and intentionally conspire, combine, confederate, and agree with each other and others, both known and unknown to the Grand Jury, to knowingly and with the intent to defraud, execute and willfully participate in a material scheme and artifice to: (a) defraud any person in connection with any commodity for future delivery, that is, precious metals futures contracts; and (b) to obtain, by means of false and fraudulent pretenses, representations, and promises, any money or property in connection with the

purchase or sale of any commodity for future delivery, that is precious metals futures contracts, in violation of Title 18, United States Code, Section 1348.

### Purpose of the Conspiracy

13. It was the purpose of the conspiracy for FLOTRON and his co-conspirators to unlawfully enrich themselves and UBS by obtaining illicit trading profits and avoiding losses.

### Manner and Means of the Conspiracy

14. FLOTRON and his co-conspirators placed Trick Orders for precious metals futures contracts on COMEX, that is, large orders which FLOTRON and his co-conspirators entered with the intent, at the time they entered the orders, to cancel before execution.

15. The Trick Orders placed by FLOTRON and his co-conspirators were designed and intended to deceive other participants in the market for precious metals futures contracts by injecting materially false and misleading information about increased supply or demand in the market.

16. In conjunction with the Trick Orders, FLOTRON and his co-conspirators placed one or more, smaller, Genuine Orders on the opposite side of the market as the Trick Orders in an effort to buy or to sell precious metals futures contracts at prices, quantities, and at times that otherwise would not have been available to FLOTRON and his co-conspirators.

17. The Trick Orders placed by FLOTRON and his co-conspirators frequently, and fraudulently, induced other market participants to place offers to buy

or bids to sell precious metals futures contracts at prices, quantities, and at times that they otherwise would not, frequently driving up or down the price of those precious metals futures contracts and causing FLOTRON's and his co-conspirators' Genuine Orders to be filled.

18. After the Trick Orders successfully caused at least one lot of the Genuine Orders placed by FLOTRON and his co-conspirators to be filled, FLOTRON and his co-conspirators canceled the Trick Orders in an effort to ensure that they would not be executed in the market.

19. FLOTRON demonstrated, explained, and trained at least one co-conspirator at UBS in the process of placing Trick Orders, placing Genuine Orders, and canceling the Trick Orders.

20. Between approximately July 2008 and approximately November 2013, FLOTRON and his co-conspirators placed hundreds of Trick Orders for precious metals futures contracts in an effort to cause Genuine Orders placed by FLOTRON and his co-conspirators to be filled at prices, quantities, and at times that they otherwise would not.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH FOUR
(Commodities Fraud)

21. The allegations set forth in paragraphs 1 through 10 and 13 through 20 are hereby re-alleged and incorporated by reference as though set forth in full herein.

22. Beginning in approximately July 2008 and continuing through approximately November 2013, the exact dates being unknown to the Grand Jury,

the defendant, FLOTRON, did knowingly and with the intent to defraud, execute and willfully participate in a material scheme and artifice to: (a) defraud any person in connection with any commodity for future delivery, that is, precious metals futures contracts; and (b) obtain, by means of materially false and fraudulent pretenses, representations, and promises, any money or property in connection with the purchase or sale of any commodity for future delivery, that is precious metals futures contracts.

23. On or about the dates set forth below, in the Northern District of Illinois, the defendant FLOTRON knowingly executed the scheme and artifice by transmitting and causing to be transmitted to a CME Group server an offer to sell precious metals futures contracts, with the intent, at the time the offer was entered, to cancel the offer before it could be executed, which fraudulently represented the state of the market so he could purchase precious metals futures contracts at a below-market price, as set forth below:

| Count | Approx. Date | Approx. Time | Product | Approx. No. of Contracts in Sell Order | Approx. No. of Contracts Purchased | Approx. Value of Contracts Purchased |
|---|---|---|---|---|---|---|
| 2 | June 28, 2012 | 12:26 p.m. (central time) | gold futures contracts | 55 | 8 | $1,240,120 |
| 3 | Feb. 15, 2013 | 4:59 a.m. (central time) | silver futures contracts | 55 | 5 | $754,500 |
| 4 | Nov. 11, 2013 | 4:37 a.m. (central time) | gold futures contracts | 222 | 5 | $641,900 |

All in violation of Title 18, United States Code, Sections 1348 and 2.

## COUNTS FIVE THROUGH SEVEN
(Spoofing)

24. The allegations set forth in paragraphs 1 through 10 and 13 through 20 are hereby re-alleged and incorporated by reference as though set forth in full herein.

25. On or about the dates set forth below, in the Northern District of Illinois, the defendant FLOTRON knowingly engaged in trading, practice, and conduct, on and subject to the rules of CME Group markets, that was "spoofing," that is bidding or offering with the intent, at the time the bid or offer was placed, to cancel the bid or offer before execution, by causing to be transmitted, to a CME Group server, futures contract orders that he intended, at the time the orders were placed, to cancel before execution, as set forth below:

| Count | Approx. Date Order Placed | Approx. Time Order Placed | Product | Side | Approx. Number of Contracts in Order | Approx. Price Per Ounce | Approx. Total Value of Order |
|---|---|---|---|---|---|---|---|
| 5 | June 28, 2012 | 12:26 p.m. (central time) | gold futures contracts | sell | 55 | $1,550.50 | $8,527,750 |
| 6 | Feb. 15, 2013 | 4:59 a.m. (central time) | silver futures contracts | sell | 55 | $30.190 | $8,302,250 |
| 7 | Nov. 11, 2013 | 4:37 a.m. (central time) | gold futures contracts | sell | 222 | $1,284.20 | $28,509,240 |

All in violation of Title 7, United States Code, Sections 6c(a)(5)(C) and 13(a)(2) and Title 18, United States Code, Section 2.

A TRUE BILL

/s/
_____
FOREPERSON

UNITED STATES OF AMERICA

_____
JOHN H. DURHAM
UNITED STATES ATTORNEY
DISTRICT OF CONNECTICUT

_____
SANDRA MOSER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

_____
AVI M. PERRY
ASSISTANT U.S. ATTORNEY

_____
NICHOLAS E. SURMACZ
ASSISTANT CHIEF
MICHAEL J. RINALDI
MATTHEW F. SULLIVAN
TRIAL ATTORNEYS