UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:17CR220(JAM) |
| | : | |
| v. | : | |
| | : | |
| ANDRE FLOTRON | : | February 13, 2018 |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS THE SUPERSEDING INDICTMENT OR,
IN THE ALTERNATIVE, TO STRIKE PREJUDICIAL SURPLUSAGE**

On February 6, 2018, the defendant, Andre Flotron, filed a Motion to Dismiss the Superseding Indictment or, in the Alternative, to Strike Prejudicial Surplusage (hereinafter, the "Motion") (Doc. No. 66) as well as a supporting memorandum, *see* Mem. of Law in Support of Motion (hereinafter, the "Mem.") (Doc. No. 67). In the Motion, the defendant seeks dismissal of the Superseding Indictment on two grounds: (i) that the commodities fraud charges are legally insufficient; and (ii) that the commodities fraud statute and the Commodity Exchange Act's anti-spoofing provision are unconstitutionally vague as applied to him. Finally, the defendant seeks, in the alternative, to strike alleged prejudicial surplusage. The defendant's motion to dismiss should be denied, as: (i) the Superseding Indictment plainly and sufficiently alleges that the defendant violated the commodities fraud and conspiracy statutes; and (ii) the text of the commodities fraud statute and the Commodity Exchange Act's anti-spoofing provision is sufficiently clear to convey what conduct the statute prohibits. Finally, as the purported surplusage is admissible and relevant to the charges against the defendant, his motion to strike should be denied.

## FACTUAL BACKGROUND

On January 30, 2018, a federal grand jury sitting in New Haven, Connecticut, returned a Superseding Indictment charging the defendant and unnamed co-conspirators with various offenses stemming from his participation in a scheme to defraud market participants in the precious metals futures market. *See* Superseding Indictment (Doc. No. 58).   Specifically, the defendant is charged with conspiracy to commit commodities fraud, in violation of 18 U.S.C. § 1349 (Count 1), commodities fraud, in violation of 18 U.S.C. §§ 1348 and 2 (Counts 2–4), and spoofing, in violation of 7 U.S.C. §§ 6c(a)(5)(C) and 13(a)(2) and 18 U.S.C. § 2 (Counts 5–7).

The Superseding Indictment describes how the defendant and his co-conspirators placed large "Trick Orders" for precious metals futures contracts that were "designed and intended to deceive other participants in the market for precious metals futures contracts by injecting materially false and misleading information about increased supply or demand in the market." Superseding Indictment ¶¶ 14–15. At the time they entered the Trick Orders, the Superseding Indictment alleges that the defendant and his co-conspirators intended to cancel them before execution. *Id.* ¶ 14.

In conjunction with these Trick Orders, the Superseding Indictment further alleges that the defendant and his co-conspirators placed smaller "Genuine Orders" on the opposite side of the market, in an effort to buy or to sell precious metals futures contacts at more favorable prices, quantities, and times than otherwise would have

been available to them. *Id.* ¶ 16. According to the Superseding Indictment, the Trick Orders fraudulently induced other market participants "to place offers to buy or bids to sell precious metals futures contacts at prices, quantities, and at times that they otherwise would not, frequently driving up or down the price of those precious metals futures contracts and causing . . . [the co-conspirators'] Genuine Orders to be filled." *Id.* ¶ 17. "After the Trick Orders successfully caused at least one lot of the Genuine Orders . . . to be filled, FLOTRON and his co-conspirators canceled the Trick Orders in an effort to ensure that they would not be executed in the market." *Id.* ¶ 18.

The Superseding Indictment further alleges that, between approximately July 2008 and November 2013, the defendant and his co-conspirators placed hundreds of Trick Orders in an effort to cause Genuine Orders placed by the defendant and his co-conspirators to be filled at prices, quantities, and at times that they otherwise would not. *Id.* ¶ 20.

## DISCUSSION

### I.   The Commodities Fraud Charges Are Legally Sufficient

The defendant first argues that the Court should dismiss the conspiracy charge in Count 1 and the substantive commodities fraud charges in Counts 2-4 because, in his view, "the government cannot establish fraudulent intent or a scheme to defraud." Mem. at 6.

## A.    Legal Standard

"It is well-established that an indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges that he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (internal citations and quotation marks omitted). "Nevertheless, an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (internal citations and quotations omitted). Indeed, "[a]n indictment . . . need not be perfect, and common sense and reason are more important than technicalities." *United States v. Bustos de la Pava*, 268 F.3d 157, 162 (2d Cir. 2001).

"When deciding a motion to dismiss a count of an indictment, a court must accept all the factual allegations in the indictment as true." *United States v. Scully*, 108 F. Supp. 3d 59, 117 (E.D.N.Y. 2015). "The validity of an indictment is tested by its allegations, not by whether the government can prove its case." *United States v. Giordano*, 260 F. Supp. 2d 477, 480 (D. Conn. 2002) (internal citations and quotations omitted).

## B.    Argument

As a threshold matter, while the defendant asserts that the government failed to sufficiently plead a scheme to defraud or fraudulent intent, *see* Mem. at 10, he

appears to concede that the Superseding Indictment tracks the language of the conspiracy statute (18 U.S.C. § 1349) (Count 1) and the commodities fraud statute (18 U.S.C. § 1348) (Counts 2-4). Indeed, as to Count 1, Paragraph 12 of the Superseding Indictment fully tracks the statutory language of the conspiracy statute and describes the time and place (in approximate terms) of the alleged conspiracy. As to Counts 2-4, Paragraphs 22-23 fully track the statutory language of the commodities fraud statute and describe the time and place (in approximate terms) of both the scheme and the charged executions of the scheme. In addition, while not required, the Superseding Indictment also alleges – in detail – the manner and means of the conspiracy and the scheme and artifice to defraud, *see* Superseding Indictment ¶¶ 14-20, which fully inform the defendant of the charges with enough detail that he may plead double jeopardy in any future prosecution based on the same set of events, *see Walsh*, 194 F.3d at 44. As the four corners of the Superseding Indictment track the language of the statutory violations charged in Counts 1-4 and state the time and place (in approximate terms) of the alleged crimes, the Superseding Indictment is legally sufficient as to each count. *Alfonso*, 143 F.3d at 776.

The cases cited by the defendant do not alter this analysis. The defendant relies heavily on *United States v. Radley*, 659 F. Supp. 2d 803 (S.D. Tex. 2009), *aff'd*, 632 F.3d 177 (5th Cir. 2011), a prosecution under the anti-manipulation provision of the Commodity Exchange Act, 7 U.S.C. § 13(a)(2), and the wire fraud statute, relating to the sale of propane futures that were not traded on an exchange regulated by the

CFTC. In *Radley*, the Fifth Circuit affirmed the dismissal of the indictment's price manipulation and cornering counts "because Appellees' conduct fell within a statutory exemption for off-exchange commodities transactions[.]" 632 F.3d at 179. The Fifth Circuit extended that reasoning to the wire fraud charges, concluding that "when the government's allegations charge market manipulation and cornering as the 'scheme to defraud,' and our preceding discussion explains why this is not criminal conduct when falling within the § 2(g) exemption for OTC propane trades, the same scheme cannot alone be re-characterized and rendered illegal as wire fraud." *Id.* at 185. Here, there is no similar exemption at issue, as the Superseding Indictment alleges that the scheme involved bids and offers for precious metals futures contracts placed by the defendant and his co-conspirators on the COMEX exchange, a registered entity as defined in 7 U.S.C. § 1a(40). Superseding Indictment ¶¶ 6, 14-20.

Further, neither *United States v. Finnerty*, 533 F.3d 143 (2d Cir. 2008), nor *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189 (3d Cir. 2001), involves a motion to dismiss a criminal indictment prior to trial. In *Finnerty*, the Second Circuit affirmed the district court's grant of a *post-trial* motion for a judgment of acquittal, holding that the government did not prove its case at trial. 533 F.3d at 143. Similarly, *GFL Advantage Fund* involved a civil summary judgment motion and not the sufficiency of a criminal indictment. 272 F.3d at 194.

The final case cited by the defendant, however, is instructive. In *United States v. Coscia*, 866 F.3d 782 (7th Cir. 2017), the Seventh Circuit affirmed the defendant's conviction for commodities fraud under 18 U.S.C. § 1348 where the trial evidence demonstrated that "Mr. Coscia designed a scheme to pump and deflate the market through the placement of large orders. His scheme was deceitful because, at the time he placed the large orders, he intended to cancel the orders." 866 F.3d at 797. The Superseding Indictment here makes virtually the same allegations. Superseding Indictment ¶¶ 14-18. Notably, the district court in *Coscia* denied a similar motion to dismiss the commodities fraud counts as legally insufficient, holding that the indictment properly alleged a fraudulent scheme under 18 U.S.C. § 1348. *United States v. Coscia*, 100 F. Supp. 3d 653, 659-61 (N.D. Ill. 2015).

The defendant further argues that Counts 1-4 should be dismissed because of facts, assertions, and information proffered by the defendant, including that: (i) the defendant did not make any misrepresentations;[1] (ii) the defendant did not have fraudulent intent; and (iii) the facts of *Coscia* are distinguishable.[2] At this stage, these arguments miss the mark, as "a court must accept all the factual allegations in

---

[1] "False representations or material omissions are not required for a conviction under § 1348(1)." *United States v. Mahaffy*, 693 F.3d 113, 125 (2d Cir. 2012).

[2] The defendant alleges that *Coscia* is factually distinguishable because Mr. Coscia used a computer algorithm to enter his orders, while the defendant manually entered his. Such a distinction is of no moment, however, as traders have been convicted of similar schemes involving manual orders. *See United States v. David Liew*, 17-cr-00001 (Plea Agreement) (Doc. No. 21 at 7) (N.D. Ill. June 1, 2017) ("Defendant LIEW generated Spoof Orders manually . . .); *United States v. Navinder Sarao*, 15-cr-00075 (Plea Agreement) (Doc. No. 62 at 6) (N.D. Ill. Nov. 9, 2016) ("Defendant SARAO generated Spoof Orders in two principal ways: (1) manually and (2) using automated programs.").

7

the indictment as true" when evaluating a motion to dismiss an indictment. *Scully*, 108 F. Supp. 3d at 117. As here, where the Superseding Indictment tracks the language of the statutes charged and states the time and place (in approximate terms) of the alleged crimes, the motion must be denied. *See Alfonso*, 143 F.3d at 776.

## II. The Anti-Spoofing and Commodities Fraud Statutes Are Not Unconstitutionally Vague

The defendant next argues that the Superseding Indictment should be dismissed because the commodities fraud and anti-spoofing statutes are unconstitutionally vague.

### A. Legal Standard

In order to satisfy the Fifth Amendment's due process guarantee, a criminal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *see also Welch v. United States*, 136 S. Ct. 1257, 1262 (2016) ("The void-for-vagueness doctrine prohibits the government from imposing sanctions 'under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.'" (quoting *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015)). A statute is unconstitutionally vague only if it cannot be construed in a way that eliminates the vagueness problem. *See Skilling v. United States*, 561 U.S. 358, 403 (2010) ("In urging invalidation of § 1346, [the defendant] swims against our case law's current, which

requires us, if we can, to construe, not condemn, Congress' enactments.").

Because the defendant's vagueness challenge does not implicate his First Amendment rights, "it is assessed for vagueness only 'as applied,' *i.e.*, in light of the specific facts of the case at hand and not with regard to the statute's facial validity." *United States v. Rybicki*, 354 F.3d 124, 129 (2d Cir. 2003) (internal quotation marks omitted); *see also Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) ("Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis."). The as-applied analysis, therefore, examines the defendant's conduct and does not look to any hypothetical array of potential conduct upon which a statute may touch. *See United States v. Coonan*, 938 F.2d 1553, 1562 (2d Cir. 1991) ("In the absence of first amendment considerations, vagueness challenges must be evaluated based on the particular application of the statute and not on the ground that the statute may conceivably be applied unconstitutionally to others in situations not before the Court." (internal citation, brackets, quotation marks omitted)).[3]

In addition, when a statute requires bad intent, the scienter requirement "alleviates vagueness concerns, narrows the scope of its prohibition, and limits

---

[3] There is no support for the defendant's vagueness arguments, therefore, based on his general assertions that the anti-spoofing statute's definition "would encompass legitimate trading activity," Mem. at 22, or that the "inadequacy of the 'intent to cancel' standard is further illustrated by the fact that . . . the vast majority of orders entered in electronic futures markets are canceled prior to execution," *id.* at 24. *Cf. Coscia*, 866 F.3d 794 ("[B]ecause Mr. Coscia's behavior clearly falls within the confines of the conduct prohibited by the statute, he cannot challenge any allegedly arbitrary enforcement that could hypothetically be suffered by a theoretical legitimate trader.").

prosecutorial discretion." *McFadden v. United States*, 135 S. Ct. 2298, 2307 (2015) (brackets and quotations omitted); *see also Skilling*, 561 U.S. at 412 (explaining that a statute's "mens rea requirement further blunts any notice concern" regarding vagueness); *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 526 (1994) ("The Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice . . . that the conduct is proscribed." (brackets and quotation omitted)).

### B. The Commodities Fraud Statute Is Not Unconstitutionally Vague.

Counts 2-4 of the Superseding Indictment charge the defendant with violations of 18 U.S.C. § 1348, which makes it unlawful for "[w]hoever knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud any person in connection with any commodity for future delivery . . . or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of any commodity for future delivery."

#### 1. The Commodities Fraud Statute Provides Fair Notice and Warning

Without citation to any authority, the defendant claims that Section 1348 is vague as applied to him, claiming that he is "the first trader who manually entered his orders and manually canceled those orders to be indicted for commodities fraud based on alleged spoofing." Mem. at 17. Whether or not this is true (and it is not[4]), it

---

[4] As discussed in Footnote 3, *supra*, the defendant is *not* the first trader to be charged with fraud offenses involving manually entering orders into a futures exchange with the intent to

is irrelevant. *Cf. United States v. Coren*, No. 07-CR-265, 2008 WL 4488995, at *8 (E.D.N.Y. Aug. 29, 2008) ("[The defendant] is correct that, at least to the Court's knowledge, this is the first criminal case of its kind, but for every kind of crime there is always an inaugural charge.").

Here, the requisite elements of Section 1348 are straightforward and provided fair notice and warning to the defendant that the charged conduct was prohibited by the statute. Indeed, several courts have considered and rejected vagueness challenges to Section 1348, finding the statute's language sufficiently clear to convey to an ordinary person what conduct the statute intends to proscribe. *See United States v. Motz*, 652 F. Supp. 2d 284, 295 (E.D.N.Y. 2009) ("[Section 1348]'s language is intentionally broad because Congress sought to create a mechanism by which prosecutors could combat the myriad of ever-evolving . . . fraud schemes."); *see also United States v. Melvin*, 143 F. Supp. 3d 1354, 1372 (N.D. Ga. 2015) (describing the elements of §§ 1348(1) and 1348(2) as "equally straightforward" and finding "no evidence that the statute creates a trap for the unwary or that it permits arbitrary enforcement" (internal quotation marks omitted)); *Coscia*, 100 F. Supp. 3d at 661 (finding the indictment's allegations consistent with the language of Section 1348 and declining to find the indictment "fails to provide a person of ordinary intelligence fair

---

cancel them. *See Liew*, 17-cr-00001 (Information) (Doc. No. 17) (N.D. Ill. May 24, 2017) (conspiracy to commit wire fraud affecting a financial institution); *Sarao*, 15-cr-00075 (Indictment) (Doc. No. 24) (N.D. Ill. Sept. 2, 2015) (commodities fraud; commodity price manipulation).

notice of the conduct that it prohibits" (quotation omitted)).[5] The defendant has articulated no reason why this Court should reach a different conclusion here.

### 2. The Commodities Fraud Statute Does Not Invite Arbitrary or Discriminatory Enforcement

"[T]he requisite elements of [Section 1348] are straightforward" and therefore provide a standard to apply that "is sufficiently clear to prevent the arbitrary or discriminatory application of [the statute]." *Motz*, 652 F. Supp. 2d at 295. Here, the allegations contained in the Superseding Indictment easily meet that standard. For example, the Superseding Indictment alleges that the defendant placed orders "designed and intended to deceive . . . by injecting materially false and misleading information . . . in the market," Superseding Indictment ¶ 15, and that he "frequently, and fraudulently, induced other market participants to [trade] at prices, quantities, and at times that they otherwise would not," *id.* ¶ 17. These allegations are consistent with Section 1348's prohibition of a scheme to defraud or a scheme to obtain money or property through the use of false or fraudulent pretenses, representations, or promises in connection with a commodity for future delivery. *Cf. Coscia*, 100 F. Supp. 3d at 661 ("Here, the allegations of the Indictment—that Coscia created a 'false impression,' 'fraudulently induced,' and 'tricked' others . . . are[] consistent with the scheme to defraud and use of 'false or fraudulent pretenses, representations, or promises' described in the statute." (brackets omitted)). Accordingly, the commodities

---

[5] While Coscia pursued an argument before the District Court that Section 1348 was unconstitutionally vague, he abandoned that argument in the appeal of his conviction to the Seventh Circuit.

fraud statute, as applied in this case, is not unconstitutionally vague, and the defendant's motion to dismiss Counts 1-4 should be denied.

### C.    The Anti-Spoofing Statute Is Not Unconstitutionally Vague

Counts 5-7 of the Superseding Indictment charge the defendant with violating the anti-spoofing provision of the Commodities Exchange Act, which states:

> It shall be unlawful for any person to engage in any trading, practice, or conduct on or subject to the rules of a registered entity that— . . . is, is of the character of, or is commonly known to the trade as, "spoofing" (bidding or offering with the intent to cancel the bid or offer before execution).

7 U.S.C. § 6c(a)(5)(C). A knowing violation of this anti-spoofing statute is a felony. *Id.* § 13(a)(2). As described below, the anti-spoofing statute is not unconstitutionally vague because it provides a definition of spoofing and imposes a scienter requirement.

### 1.    The Anti-Spoofing Statute Provides Fair Notice and Warning

"The idea of fair warning is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Al Kassar*, 660 F.3d 108, 119 (2d Cir. 2011) (internal quotation marks omitted); *see also United States v. Lanier*, 520 U.S. 259, 267 (1997) ("The touchstone [of fair warning] is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal."). The anti-spoofing statute "clearly defines 'spoofing' in the parenthetical" contained in the statutory language, specifically, that spoofing is "bidding or offering with the intent to cancel the bid or offer before execution." *Coscia*, 866 F.3d at 792; *see also*

13

*CFTC v. Oystacher*, 203 F. Supp. 3d 934, 942 (N.D. Ill. 2016) ("The Spoofing Statute forbids and parenthetically defines spoofing as 'bidding or offering with the intent to cancel the bid or offer before execution.'").

The defendant does not dispute that "spoofing" is defined in the statute, but instead claims that the definition is "inherently vague" and "would encompass legitimate trading activity" because "there simply is no common understanding of spoofing in futures markets." Mem. at 22. This bare assertion ignores the plain language of the definition and how it distinguishes the charged conduct—placing orders with the intent to cancel before execution—from legitimate market practices. *See Coscia*, 177 F. Supp. 3d at 1092 ("[Coscia's] intent to cancel the orders before he executed them differentiated his conduct from other, legitimate practices such as fill-or-kill and partial-fill orders.").

Here, the plain language of the statute prohibits placing orders with the intent, at the time the orders are placed, to cancel them before execution. The statute thus provides fair notice and warning of the prohibited conduct. *See Oystacher*, 203 F. Supp. 3d at 945 ("[T]he statute is not required to exhaustively list trade behaviors that it prohibits. Instead, the Spoofing Statute outlaws a particular intent, namely, placing orders with the intent to cancel them before execution."); *see also Mannix v. Phillips*, 619 F.3d 187, 197 (2d Cir. 2010) ("Although a law must provide explicit standards, it need not achieve meticulous specificity, which would come at the cost of flexibility and reasonable breadth." (internal quotations omitted)).

14

The defendant's arguments regarding the CFTC's development of regulatory guidance related to the anti-spoofing statute are equally unavailing. Even assuming that all of the defendant's claims regarding "the muddled history of the provision and the CFTC's subsequent failed rulemaking attempt," Mem. at 18, are true, the defendant had fair notice and warning—based on the plain language of the statute— that the trading activity charged in Counts 5-7 was unlawful. *See Coscia*, 866 F.3d at 793 ("[T]he arguments about a lack of industry definition or legislative history are irrelevant. The statute 'standing alone' clearly proscribes the conduct; the term 'spoofing' is defined in the statute."). The Superseding Indictment clearly states that the government is proceeding on a theory that the defendant:

> knowingly engaged in trading, practice, and conduct, on and subject to the rules of CME Group markets, that was 'spoofing,' that is bidding or offering with the intent, at the time the bid or offer was placed, to cancel the bid or offer before execution, by causing to be transmitted, to a CME Group server, futures contract orders that he intended, at the time the orders were placed, to cancel before execution.

Superseding Indictment ¶ 25 (emphasis added). Thus, the charged conduct falls squarely within the actual definition of spoofing contained in the statute, and nothing that may or may not have happened during the CFTC rulemaking process changes that. *See Coscia*, 866 F.3d at 793 ("Congress enacted the anti-spoofing provision specifically to stop spoofing—a term it defined in the statute. Accordingly, any agency inaction . . . is irrelevant; Congress provided the necessary definition and, in doing so, put the trading community on notice.").

### 2.     The Spoofing Statute Does Not Invite Arbitrary or Discriminatory Enforcement

The purpose of the arbitrary-and-discriminatory-enforcement prong of the vagueness doctrine is to rein in "[s]tatutory language of such a standardless sweep [that it] allows policemen, prosecutors, and juries to pursue their personal predilections." *Smith v. Goguen*, 415 U.S. 566, 575 (1974). Statutory language must therefore "establish minimal guidelines to govern law enforcement." *Id.* at 574. "[T]he inquiry will involve determining whether the conduct at issue falls so squarely in the core of what is prohibited by the law that there is no substantial concern about arbitrary enforcement because no reasonable enforcing officer could doubt the law's application in the circumstances." *Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006).

Here, the defendant cannot show that prosecution of the conduct charged in Counts 5-7 arose from arbitrary enforcement under the anti-spoofing statute, because the charged "conduct falls well within the provision's prohibited conduct." *Coscia*, 866 F.3d at 794.   While the defendant acknowledges that the Seventh Circuit in *Coscia* rejected an as-applied vagueness challenge to the anti-spoofing statute, *see* Mem. at 23, he seeks to distinguish his conduct by arguing that Mr. Coscia, unlike the defendant, used a trading program that was designed to enter and cancel orders quickly before execution, *id.* This argument ignores the simple fact that the conduct prohibited by the anti-spoofing statute is the placement of an order that the trader intends to cancel before execution, not whether that order is actually executed. Thus, the defendant's arguments that his orders were active "for far longer. . . than was

16

necessary for them to be executed" and "more than long enough to be traded against," Mem. at 23–24, miss the point.[6]

In addition, the anti-spoofing statute requires that an individual place orders with "the intent to cancel the bid or offer before execution," 7 U.S.C. § 6c(a)(5)(C), and that the individual do so "knowingly," 7 U.S.C. § 13(a)(2). This imposes "clear restrictions on whom a prosecutor can charge with spoofing," namely, "only a person whom they believe a jury will find possessed the requisite specific intent to cancel orders at the time they were placed." *Coscia*, 866 F.3d at 794; *see also Oystacher*, 203 F. Supp. 3d at 943 ("[T]he Spoofing Statute's scienter requirement mitigates any vagueness concerns."); *McFadden*, 135 S. Ct. at 2230 (a scienter requirement "alleviates vagueness concerns, narrows the scope of its prohibition, and limits prosecutorial discretion." (internal brackets and quotation marks omitted). As the Seventh Circuit explained:

> Importantly, the anti-spoofing statute's intent requirement renders spoofing meaningfully different from legal trades such as "stop-loss orders" ("an order to sell a security once it reaches a certain price") or "fill-or-kill orders" ("an order that must be executed in full immediately, or the entire order is cancelled") because those orders are designed to be executed upon the arrival of *certain subsequent events*. Spoofing, on the other hand, requires, an intent to cancel the order *at the time it was*

---

[6] The defendant repeatedly notes that his orders were active in the market for longer periods of time, during which they were susceptible to being traded, *see, e.g.*, Mem. at 13, 23–24, seeming to imply that this somehow proves his orders were legitimate and that he did not place them with the intent to cancel. The defendant points out that, for the 1,273 potential spoofing instances that the government has identified, the orders were active in the market for, on average, 23 seconds. Mem. at 13 n.2. All of those 1,273 orders, however, were canceled before execution, with *none* of the orders being filled, either partially or fully. *Id.*

> *placed*. The fundamental difference is that legal trades are
> cancelled only following a condition subsequent to placing
> the order, whereas orders placed in a spoofing scheme are
> never intended to be filled at all.

*Coscia*, 866 F.3d at 795 (emphasis in original). In sum, the spoofing statute's *mens rea* requirement removes any concerns that the statute may invite arbitrary or discriminatory enforcement, and the defendant's motion to dismiss Counts 5-7 on vagueness grounds should be denied.

## III.   The Defendant's Motion to Strike Surplusage Should be Denied

Finally, the defendant seeks to strike what he alleges is "surplus and prejudicial language from the Indictment." Mem. at 26. In this regard, he points to two instances of alleged surplusage: (i) the use of the term "Trick Orders" to describe certain of the defendant's bids and offers; (ii) and the inclusion of the "Approx[imate] Value of Contracts Purchased" and "Approx[imate] Total Value of Order." Mem. at 27-29.

### A.   Legal Standard

"Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) (internal quotation marks and citation omitted). As long as "evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." *Id.* "This standard is an exacting one, and only rarely is alleged surplusage stricken from an indictment." *United States v.*

18

*Murgio*, 209 F. Supp. 3d 698, 724 (S.D.N.Y. 2016) (citation and internal quotation marks omitted).

**B.     Argument**

Because each of the terms the defendant seeks to strike as surplusage relates to admissible evidence that is relevant to the charges in the Superseding Indictment, the motion to strike should be denied.

First, with regard to the term "Trick Orders," the government expects to present evidence at trial that the defendant instructed one of his co-conspirators to place orders that he intended to cancel before execution in order to "trick" the market, using that very term. *Scarpa*, 913 F.2d at 1013 ("[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." (internal quotation marks and citations omitted)). Thus, the term "Trick Orders" is relevant to the charges in the Superseding Indictment. *See Mahaffy*, 693 F.3d at 125 (explaining that fraudulent intent is an element of Section 1348).

Second, as to the Approximate Value of Contracts Ordered and the Approximate Total Value of Order columns in the charts relating to Counts 2-7, these values represent the actual orders that the defendant placed and/or executed in the market as to each count. For example, when the defendant placed the order alleged in Count 7, he submitted an order to the CME Group that, if executed, would have

been worth approximately $28,509,204.[7] As the Superseding Indictment alleges, Trick Orders placed by the defendant, such as the orders alleged in Counts 5-7, were placed "designed and intended to deceive other participants in the market . . . by injecting materially false and misleading information about increased supply or demand in the market." Superseding Indictment ¶ 15. The fact that the Trick Orders placed by the defendant and his co-conspirators misrepresented market conditions by millions of dollars is relevant to prove that the Trick Orders were "designed and intended to deceive other participants in the market." *Id*. Further, as the "Approx. Value of Contracts Purchased" column in Counts 2-4 represents the dollar amount of the Genuine Orders that the Superseding Indictment alleges the defendant purchased as a result of each of the charged executions of the scheme, Superseding Indictment ¶ 23, such evidence is equally admissible and relevant to proving each of the executions of the scheme alleged in Counts 2-4, and the motion to strike should be denied. *See Scarpa*, 913 F.2d at 1013.

---

[7] For the conduct at issue in Count 7, the Superseding Indictment alleges that the defendant placed an order to sell approximately 222 lots of gold futures contracts at a price of approximately $1,284.20 per ounce of gold. As each gold futures contract traded on the CME group represents 100 ounces of gold, the order placed by the defendant had a total value of approximately $28,509,240 (i.e., 222 x $1,284.20 x 100).

## **CONCLUSION**

For the foregoing reasons, the defendant's Motion to Dismiss the Superseding

Indictment or, in the Alternative, to Strike Prejudicial Surplusage should be denied.


Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

AVI M. PERRY
ASSISTANT UNITED STATES ATTORNEY
United States Attorney's Office
157 Church Street, 25th Floor
New Haven, CT 06510
(203) 821-3700 (telephone)
(203) 773-5377 (fax)
avi.m.perry@usdoj.gov
Federal Bar No. phv07156


SANDRA MOSER
Acting Chief, Fraud Section
U.S. Department of Justice

/s/ Nicholas E. Surmacz
Nicholas E. Surmacz
Assistant Chief, Fraud Section
Michael J. Rinaldi
Matthew F. Sullivan
Trial Attorneys, Fraud Section
U.S. Department of Justice
1400 New York Ave., N.W.
Washington, D.C. 20530
(202) 353-0647 (telephone)
(202) 616-1660 (fax)
Nicholas.Surmacz@usdoj.gov

21

<u>CERTIFICATE OF SERVICE</u>

This is to certify that on February 13, 2018, a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

AVI M. PERRY
ASSISTANT UNITED STATES ATTORNEY