UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> ANDRE FLOTRON, <br><br> Defendant. | S1 17 Cr. 220 (JAM) <br><br> March 8, 2018 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE
REGARDING UBS COMPLIANCE CODES AND POLICIES**

Defendant Andre Flotron respectfully submits this memorandum of law in support of his motion *in limine*, pursuant to Federal Rules of Evidence 403, to preclude the government from introducing as evidence at trial various compliance trainings and manuals identified on the government's exhibit list, or any similar compliance documents. It is well established that federal crimes are defined by statute, not by the aspirational and often vague language of a company's internal compliance codes and manuals. Permitting the government to admit these documents at trial would encourage the jury to potentially convict Mr. Flotron, not for violating federal law, but for potentially running afoul of internal UBS company policies. This is unfairly prejudicial and should not be permitted.

**BACKGROUND**

On February 16, 2018, the government disclosed its exhibit list to the to the defense. *See* ECF No. 95 (the "Exhibit List"). The Exhibit List includes six documents that relate to various UBS compliance manuals and computerized trainings. *See* GX 009-014. The majority of these documents are undated, making if difficult, if not impossible, to determine with any certainty

when they were published or distributed by UBS, and whether or not they were ever provided to, viewed by, or completed by Mr. Flotron.

To the extent these documents address potentially fraudulent conduct or "spoofing," they use vague and non-uniform language that has no connection to the language of the commodities fraud statute that Mr. Flotron is charged with violating. For example, in regard to "spoofing," these manuals give the following differing and arbitrary explanations of the practice.

- Spoofing – Entering orders into an electronic trading system, at prices which are higher than the previous bid or lower than the previous offer, and withdrawing them before they are executed, to give a misleading impression that there is demand for or supply at that price. *See* GX 011 at 20.

- "Spoofing", "Phantom orders" – Placing fictitious trades in large, aggregated block in a trade system with the intention of immediately cancelling these again is prohibited. *See* GX 013 at 45.

- Spoofing / Excessive Cancellations – Characterized as placing a bid or offer with the intent to cancel the bid or offer before execution regardless of whether any subsequent fills occur. Includes cancelling and resubmitting orders to: overload the exchange systems, give the misleading appearance of false market depth and delay the execution of trades by others. *See* GX 010 at 24.

These manuals also include the typical, broad, aspirational language that one would expect of compliance manuals and trainings. *See, e.g.,* GX 014 at 3 ("The primary purposes of this Compliance Manual are to reaffirm the high standards of excellence, integrity, honesty and fairness expected of those who work within UBS Investment Bank in the United States . . . and to serve as a guide to and reference tool for those standards."); GX 013 at 19 ("Even if a practice is considered acceptable by the market currently, it may still be considered unacceptable by the regulators and may cause UBS reputational damage. Remember that the approach to enforcement is dynamic and will reflect current political and community concerns about how the

markets should operate. This is particularly true nowadays when electors and politicians are angry about how financial professionals have damaged the global economy.").

## ARGUMENT

"[F]ederal crimes . . . are solely creatures of statute." *United States v. Bronx Reptiles, Inc.*, 217 F.3d 82, 85 (2d Cir. 2000) (quoting *Liparota v. United States*, 471 U.S. 419, 424 (1985)); *see also United States v. Fell*, 571 F.3d 264, 270 (2d Cir. 2009) (discussing "the early republic's critical decision to reject a federal common law of crimes and to require the codification of federal criminal law"). Compliance standards – which can be aspirational and designed to accomplish reputational goals, including the setting of organizational tone and the communication of an organizational ethos to promote relations with customers and regulators – do not define the law. *See United States v. Mix*, No. 12-CR-171 (SRD), 2014 WL 2625034, at *7 (E.D. La. June 12, 2014) (jury instructed that, to the extent a company advised its employees that certain actions "could expose an employee to criminal prosecution or punishment . . . such statements are not statements of the applicable law."). Like breaches of honor codes, breaches of compliance manuals do not amount to criminal violations. In a recent similar case in this district, which also dealt with alleged fraud by bank traders, the Honorable Judge Chatigny cautioned against this same potential problem:

> I readily agree that these men are not on trial for violating those aspirational precepts . . . . The lines have to be clear. They have to be clear. It's not a question of what was in the mind of a committee at [the bank] that sat down to put together an aspirational statement that might appeal to customers. We're talking about the line that separates criminal from non-criminal. It has to be clear. You can't use the criminal law to establish it. It's got to be there beforehand.

*United States v. Shapiro et al.*, No. 3:15-cr-155 (D. Conn.), May 9, 2017 Trial Tr. at 274:17-275:14.

Permitting the government to introduce the above-referenced compliance exhibits at trial would serve only to encourage the jury to convict Mr. Flotron for hypothetical transgressions of UBS's internal policies. If these policies did nothing more than parrot the language of the federal statute that Mr. Flotron is charged with, perhaps their introduction would be acceptable. But instead, they contain a plethora of aspirational policies and contradictory definitions of industry terms of art that may be referenced at trial, largely due to the fact that the term "spoofing" had no widely accepted definition during the alleged conspiracy period at issue in this case. *See* ECF No. 67, Def. Mot. to Dismiss at 18-26 (addressing the lack of clarity regarding the meaning of the term "spoofing"). This is even more problematic in light of the current procedural posture of this case, in which Mr. Flotron is no longer being charged with violating the "spoofing" provision of the Commodities Exchange Act, but only with violation of the federal commodities fraud statute. These exhibits would be unfairly prejudicial to Mr. Flotron and would not assist the jury in its determination of his guilt or innocence of the charges at issue. Thus, these exhibits should be precluded.

## CONCLUSION

For the foregoing reasons, the defendant respectfully requests that the Court grant his motion *in limine* to preclude the government's introduction of GX 009 through GX 014 at trial, as well as the introduction of any similar documents or testimony relating to UBS's compliance policies and training modules.

    Respectfully submitted,

    GREENBERG TRAURIG, LLP

By: /s/ Marc L. Mukasey
    Marc L. Mukasey (ct29885)
    Nathan J. Muyskens (phv09472)
    200 Park Avenue

New York, NY 10166
Telephone: (212) 801-6832
Facsimile: (212) 801-6400
*Attorneys for Defendant Andre Flotron*


New York, NY 10166  
Telephone: (212) 801-6832  
Facsimile: (212) 801-6400  
*Attorneys for Defendant Andre Flotron*

## AFFIRMATION OF SERVICE

I hereby certify that on March 8, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
March 8, 2018

                                           /s/ Marc L. Mukasey
                                           Marc L. Mukasey
                                           Greenberg Traurig, LLP
                                           200 Park Avenue
                                           New York, NY 10166
                                           Telephone: (212) 801-9200
                                           Facsimile: (212) 801-6400
                                           Email: mukaseym@gtlaw.com