UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:17CR220(JAM) |
| | : | |
| v. | : | |
| | : | |
| ANDRE FLOTRON | : | March 8, 2018 |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE EVIDENCE RELATING TO TRADING ACTIVITY NOT TIMELY DISCLOSED**

The defendant has filed a motion to preclude the Government from introducing evidence at trial relating to trades that were not on the Government's "Top 25" list from December 2017. *See* Mot. to Preclude Evidence Relating to Trading Activity Not Timely Disclosed (Doc. No. 97). The motion misstates the facts surrounding the Government's disclosures, which complied with both the Court's orders and defense counsel's representations concerning the information required to prepare for trial. Accordingly, the motion should be denied.

**I.   Background**

During the hearing on December 4, 2017, defense counsel asked the Court to order the Government to identify, as soon as possible, the trading episodes on which the Government would focus during trial. The Government objected on the ground that a detailed disclosure at that early point was likely to be counterproductive, as the Government was continuing to refine its trade analysis and prepare its case for re-presentment to the grand jury in January 2018 and trial three months later. *See* Dec. 4, 2017 Tr. at 10:18-24 (Doc. No. 47) ("[F]rankly, Your Honor, we want to put

1

together for the jury rather than telling the 20 or 30 that we might put in, that might be a waste of their time, we wanted to distill it down to three, four, or five and present our best evidence."). Yet defense counsel repeatedly stated that he understood the process was an iterative one, and that the Government's view of its likely evidence might evolve during trial preparation:

- "I'm not telling them I need a blueprint this minute. But if there was six or seven or ten trades that they think are illustrative of this and they want to add more in later on down the line . . . , I get it." *Id.* at 16:23 – 17:2.

- "I'm not going to be a pain in the neck about this. If they give us 20 and they want to add in ten more, I get it. If they give us 25 and they want to subtract ten, I'm not going to be a crazy stickler about it." *Id.* at 18:18-22.

With that understanding, the Court acceded to the defendant's request and instructed the Government to turn over a list of its "Top 25" trades by December 29, 2017. *See id.* at 18:7-16, 19:14-15.

In addition to this narrow set, the Government noted during the hearing that it expected to present evidence at trial, in some fashion, of approximately 1,000 other instances of spoofing by the defendant:

> The one thing I wanted to just clarify . . . is I do think that those thousand trades that we've talked about . . . are going to be relevant at trial and may make their way into a summary exhibit at the end of the trial or something like that. I don't want to leave here suggesting that we're only going to be talking about 25 possible trades at trial. There may well be this larger universe that the Government seeks to introduce as part of its case.

*Id.* at 20:16-25. Defense counsel acknowledged that he understood the Government would seek to introduce evidence of this larger set of trades. *See id.* at 17:11-17. The

2

Court ordered the Government to disclose this list of approximately 1,000 trades by December 14, 2017. *Id.* at 19:15-18.

Consistent with the Court's orders, the Government disclosed to the defendant a list of 1,273 spoofing episodes on December 14, 2017, and its "Top 25" list on December 29, 2017. In order to identify the larger set, the Government applied certain parameters to the entire universe of trades by the defendant and a cooperating witness during the relevant period. *See id.* at 9:20-24, 10:6-10. These parameters were based on information from the cooperating witness, who alleges he was trained to spoof by the defendant. The "Top 25" list reflected the Government's assessment, at the time, of which of the 1,273 spoofing episodes best illustrated the alleged offense. The "Top 25" list was based on, *inter alia*, the timing of trades, the comparative size of spoofed orders versus primary orders, and statements by counterparties that specific spoofed orders influenced their decision to trade.

After turning over both lists in December 2017, the Government continued to investigate and prepare its case. During that process, and continuing until literally March 1, 2018, the Government continued to analyze trade data, interview counterparties, and otherwise determine how best to present its evidence.

On March 2, 2018—again, on the schedule set by the Court and more than a month before jury selection—the Government turned over its trial exhibit list to the defendant. The exhibit list identified an omnibus set of 538 episodes of spoofing by the defendant (GX 126), as well as 13 spoofing episodes by the defendant that the Government intended to focus on during trial (GX 101-115, 121, 123-125). Four of

these episodes were on the Government's "Top 25" list; nine were not, consistent with defense counsel's stated expectations. *See* Dec. 4, 2017 Tr. at 18:18-22 ("If they give us 20 and they want to add in ten more, I get it."). The Government's exhibit list also included eight episodes of spoofing by the cooperating witness (GX 116-120, 122).

On March 2, 2018, the defense served on the Government its exhibit list. In its cover letter, the defense stated that:

> "Impeachment documents and demonstrative exhibits are not included on this list. Nor are summary exhibits that Defendant may seek to offer pursuant to Rule 1006 of the Federal Rules of Evidence once the Government has identified to the defense the particularized trading activity that it will seek to introduce and prove at trial."

The defense still has not identified the demonstrative exhibits and FRE 1006 summaries that it intends to rely upon at trial, notwithstanding this Court's order. *See* Dec. 6, 2017 Order (Doc. No. 45) (ordering that the "parties shall exchange an updated exhibit list – with specific references to documents at issue – and an updated witness list by March 2, 2018").

On March 3, 2018, at counsel's request, the Government convened an early morning call to discuss defense counsel's concerns with the information contained on the Government's filed exhibit list. The Government, as always, committed to work through any issues raised by the defense. Specifically, on the call, the Government committed to provide the defense with details of certain transactions identified by the defense (the "Identified Trades").

4

On March 5, the Government provided the defense with additional details surrounding the Identified Trades. In addition, on March 6, the Government identified for the defense the specific trade details associated with two of the Government's key trial exhibits (GX 126 and GX 127), at the request of defense counsel.

## II. Discussion

*First,* the prejudice the defendant now claims is precisely why the Government objected to the premature disclosure of its likely trial evidence. The defendant insisted that the Government identify specific trades in December 2017 (more than three months before trial), and the Government objected that it likely would result in a "waste of their time." Dec. 4, 2017 Tr. at 10:20. The defendant now complains (predictably) that it *was* a waste of time, and that the Government engaged in "trickery." Mem. of Law in Support of Mot. to Preclude Evidence Relating to Trading Activity Not Timely Disclosed (hereinafter "Mem.") at 2 (Doc. No. 98). But the factual assertions and inferences underlying the defendant's complaint are way off the mark.

The parties clearly understood that the Government's "Top 25" list was likely to evolve after disclosure and before trial. *See* Dec. 4, 2017 Tr. at 16:23 – 17:2, 18:18-22. In fact, the Government explicitly flagged the risk that a compelled disclosure in December 2017—mere weeks after the lead prosecutor had to be replaced, and still months before trial—might be counterproductive. *Id.* at 10:18-24.

*Second*, the Government has provided an explicit roadmap of its case and has expressly identified to the defense the available details of the trades that will be the

5

subject of the Government's case-in-chief. Specifically, the Government previously provided defense counsel with: (1) a list of 1,273 trades on December 13, 2017; (2) the precise trades the Government expects to rely upon at trial (through the filing of its exhibit list); and (3) additional details relating to certain of the trades identified by the defense (on March 5 and March 6).

The Government identified one potential trade of the defendant's that was not part of the 1,273 trades previously identified for the defense by the Government. Also, on its exhibit list, the Government identified five potential trades of its cooperating witness that were not previously identified in the list of 1,273 trades provided to the defense on December 13, 2017.

*Third*, the extent of changes to the "Top 25" list is within the margin agreed to by defense counsel. The "Top 25" list turned over in December 2017 comprised 19 trades by the defendant and six by the cooperating witness, which the Government was considering including in the Superseding Indictment under the *Pinkerton* doctrine. *See Pinkerton v. United States*, 328 U.S. 640 (1946). But the Government understood the primary purpose of the "Top 25" list to be the identification of trades *by the defendant*, presumably so defense counsel could prepare to argue at trial that these trades did not constitute spoofing based on data analytics. The Government assumed that the defendant's trial strategy would be different as to spoofing by the cooperating witness, and that defense counsel would not employ analytics to argue that what the witness testifies was his own spoofing was not in fact spoofing. Hence, the Government disclosed the cooperating witness's six trades not because the

defendant needed extra time for analysis of these trades, but because the Government was considering charging these trades in the Superseding Indictment. *See* Dec. 6, 2017 Order (Doc. No. 45) (requiring disclosure of trades "most likely to the focus of any superseding indictment and trial evidence").

Four of the 19 trades by the defendant that appeared on the "Top 25" list were included among the 13 trades by the defendant on the Government's exhibit list, meaning that there are nine "new" trades on the exhibit list. That is clearly within the margin that defense counsel indicated would be reasonable. *See* Dec. 4, 2017 Tr. at 18:18-22.[1] The Government simply was not in a position to provide advance notice of the changes because they were not finalized until the day before the exhibit list was filed.[2]

The volume of trade data in this case is enormous, and the Government has diligently worked to prepare its case for trial on the schedule fixed by the Court. Defense counsel notes that "the defense . . . ha[s] spent hundreds of hours . . . reviewing the Top 25 List, and analyzing the data," Mem. at 2, but somehow faults the Government for taking too much time sifting through an even larger set of data. The Government narrowed the universe of trades that are at issue from roughly 500,000 to about 1,273 (in December 2017) and now to 538. The Government also significantly narrowed the list of trades by the defendant that will be the focus of trial

---

[1] The Government did not compose its exhibit list with an eye toward getting under a delta of 10 (or any other specific number).

[2] As the defendant has observed (somewhat caustically), the composition of the Government's trial team has changed a number of times, *see* Mem. at 4, including in the two weeks before the exhibit list was due.

evidence. As a result, the defendant now has more than a month to analyze the trades that were not on the "Top 25" list, but which were timely disclosed in the Government's exhibit list.

*Finally*, so there is no confusion regarding how the Government intends to use its summary exhibits (i.e., GX 100-173) in trial, the Government provides below the categories of witnesses who will testify regarding the summary exhibits:

- **Counterparties**: The Government intends to use GX 101(a)-GX 115 with counterparties.

    In addition, there are two trading episodes in GX 126 and GX 127 that the Government intends to use with counterparties. The Government will promptly provide to the defense the precise details of these trades.

- **Cooperating Witness**: The Government intends to use GX 100-GX 127 with a cooperating witness.

- **Case Agent**: The Government intends to use GX 100-GX 127 with a case agent.

- **Various Witnesses**: The Government intends to use GX 126-127 with, potentially, all of its trial witnesses.

- **Summary Witness**: The Government intends to use GX 119(a)-173 with a summary witness.

### III. Conclusion

For the foregoing reasons, the Government respectfully requests that the Court deny the defendant's motion.

                                        Respectfully submitted,

                                        JOHN H. DURHAM
                                        UNITED STATES ATTORNEY

AVI M. PERRY
ASSISTANT UNITED STATES ATTORNEY
United States Attorney's Office
157 Church Street, 25th Floor
New Haven, CT 06510
(203) 821-3700 (telephone)
(203) 773-5377 (fax)
avi.m.perry@usdoj.gov
Federal Bar No. phv07156

SANDRA MOSER
Acting Chief, Fraud Section
U.S. Department of Justice

<u>/s/ Robert Zink</u>
Robert Zink
Acting Principal Deputy Chief, Fraud Section
U.S. Department of Justice
1400 New York Ave., N.W.
Washington, D.C. 20530
(202) 616-0429 (telephone)
(202) 616-1660 (fax)
robert.zink@usdoj.gov

9

CERTIFICATE OF SERVICE

This is to certify that on March 8, 2018, a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

AVI M. PERRY
ASSISTANT UNITED STATES ATTORNEY