

Marc L. Mukasey
Tel 212.801.6832
Fax 212.801.6400
mukaseym@gtlaw.com

March 15, 2018

VIA CM/ECF

The Honorable Jeffrey A. Meyer
U.S. District Judge for the District of Connecticut
Richard C. Lee U.S. Courthouse
141 Church Street
New Haven, Connecticut 06510

Re: *United States v. Flotron*, S1 17 Cr. 220 (JAM)

Dear Judge Meyer:

Pursuant to the Court's Order, dated March 12, 2018 (ECF No. 128), Defendant Andre Flotron submits the following status report regarding his efforts to consult with Quantlab Financial LLC ("Quantlab") on a mutually agreeable resolution to Defendant's motion to compel the source code underlying Quantlab's relevant trading algorithms (ECF No. 86).[1]

Despite diligent attempts to reach a compromise position that would protect the rights of both Defendant and Quantlab, the parties are not able to reach a mutually agreeable solution.[2]

## Background

Defendant requested from the Court and obtained a subpoena *duces tecum* seeking, among other things, the source code underlying Quantlab's trading algorithm. *See* Subpoena to Produce Documents, Information, or Objects in a Criminal Case (Feb. 7, 2018) (ECF No. 87-1) (the "Subpoena"). The requested documents are critical to Defendant's ability to show that he did not enter into a conspiracy with the object of committing commodities fraud because his alleged scheme was not material to participants in the relevant exchange markets.[3]

---

[1] At oral argument on March 12, 2018, the government notified Defendant and Quantlab that it would only ask Quantlab witnesses about trading activity on three particular dates. Therefore, Defendant seeks access only to the relevant Quantlab algorithms trading in the precious metals exchange markets on those three days.

[2] Counsel for Mr. Flotron and counsel for Quantlab spoke several times between the recent oral argument and the time of this filing in order to reach an agreement, and both considered various solutions posed by the other party.

[3] The defense will brief the issue of the proper standard of materiality in its Requests to Charge, due to the Court on March 26, 2018. However, the defense believes it is entitled to the requested documents under either the "capable of influencing" standard or the "significantly alters the total mix of information available" standard. If the requested documents show that the algorithms did not look at certain levels of the order book where Mr. Flotron placed his order, his scheme would not be "capable of influencing" the algorithms. If the algorithms did not look at certain levels of the order book where Mr. Flotron placed his order *or* if they looked at myriad factors, Mr. Flotron's order would not "significantly alter the total mix of information available" to the algorithms.

Letter to The Hon. Jeffrey A. Meyer
March 15, 2018
Page 2

When Quantlab objected to producing the source code underlying its relevant trading algorithms in response to the Subpoena, Defendant filed a Motion to Compel. ECF No. 86. At oral argument on the Motion to Compel, the Court asked the parties to confer regarding whether a compromise position existed that would satisfy Defendant's rights to the disclosure of relevant and admissible documents, while protecting Quantlab's trade secrets.

### Quantlab's Compromise Proposal

Counsel for Quantlab proposed a solution in which programmers at Quantlab would develop software that would allow the company to run simulations of trading data and record the "signal" emerging from its algorithms. An algorithm's "signal" quantifies the strength of its interest, from zero to one-hundred, in a potential transaction. Quantlab's proposal would involve programmers processing archived data from the days of the relevant Quantlab trades through archived versions of the algorithms from those days, in order to produce a graphic depicting the evolving "signal."[4] Quantlab would run two simulations: one including Mr. Flotron's trades and another with his trades removed. In Quantlab's view, if the two "signal" charts are the same, Mr. Flotron's trade had no affect on the algorithm. If the two charts are not the same, then Quantlab will have quantified the affect of Mr. Flotron's trades on their algorithms.

The defense appreciates the effort counsel for Quantlab has made to come up with this novel program. The defense also acknowledges that Quantlab's proposal would require the company to devote its own resources to quickly developing a software solution that could analyze retired algorithms and archived trading data.

However, for several reasons, the defense cannot accept Quantlab's proposal in lieu of compliance with the Subpoena. First, the end result of Quantlab's program would raise as many questions or more questions than it would answer. The hypothetical charts, showing the "signal" for Quantlab algorithms with and without Defendant's trades, would entitle Defendant to ask similar questions to the ones outstanding now: why did the "signals" react in a given way or not react, and what other factors influenced the algorithms' investment decisions? Moreover, without testimony or evidence regarding the factors that go into Quantlab's algorithm, the resulting charts would offer little to nothing about why the jury should not believe that the reasonable investor in this market – not just Quantlab's specific algorithms on a certain day – would not find Defendant's orders material. Finally, Quantlab essentially proposes to create one proverbial "black box," this to-be-developed software, to test another "black box," its trading algorithm. The risk of error or mistake is high and the defense would need to expend effort and expense to merely check or confirm Quantlab's *ad hoc* program.

---

[4] The government has indicated that it will ask a legacy Teza witness about trades on two dates during the conspiracy periods, and a legacy Quantlab witness about one trade on a separate day during the conspiracy period. Therefore, the defense only seeks to inspect legacy Teza and Quantlab algorithms on those three days.

Letter to The Hon. Jeffrey A. Meyer
March 15, 2018
Page 3

## Defendant's Compromise Proposal

Defendant proposed that Quantlab produce to Defendant a list identifying the factors that its trading algorithms considered on the trading days in question that are already generally known to high-frequency trading firms. Defendant believes that there are a number of data sources common to highly sophisticated trading algorithms, and other data sources that are proprietary or otherwise more unique elements of Quantlab's "secret sauce." Defendant proposed that Quantlab acknowledge in a written document that its algorithms considered certain factors and that there were yet others that it could not disclose due to their proprietary nature. This is far more limited than the subpoena request, which seeks the actual source code. Defendant further suggested that it would consent to a motion by Quantlab to seal any proceedings or exhibits in which its proprietary information was submitted or discussed.

Counsel for Quantlab objected to producing even this incomplete list of factors – without any corresponding weighting – under any protective measures, stating that even an incomplete list of its factors would reveal proprietary information that it was not willing to disclose.

## Conclusion

Because the parties were not able to reach any mutually agreeable solution, Defendant respectfully requests that the Court grant his motion compelling Quantlab to produce documents responsive to Request #1 in the Subpoena, to wit, the source code for their trading algorithms on the three trading days relevant to their witnesses in this case.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: /s/ Marc L. Mukasey
Marc L. Mukasey (ct29885)
Nathan J. Muyskens (phv09472)
Daniel P. Filor (phv08911)
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-6832
Facsimile: (212) 801-6400
*Attorneys for Defendant Andre Flotron*