UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ANDRE FLOTRON,<br><br>                Defendant. | S1 17 Cr. 220 (JAM)<br><br>March 19, 2018 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE*
TO PRECLUDE EVIDENCE OF ALLEGED FRONT-RUNNING ACTIVITY**

Defendant Andre Flotron respectfully submits this memorandum of law in support of his motion *in limine* to preclude, pursuant to Rules 404(b) and 403 of the Federal Rules of Evidence, any evidence regarding alleged "front-running activity," which the government first indicated on March 16, 2018 it will seek to introduce at trial. Such evidence has no proper purpose in this case and its admission would severely prejudice Mr. Flotron and result in a distracting and unnecessary "trial within a trial."

**BACKGROUND**

Count One of the Superseding Indictment (ECF No. 58) charges Mr. Flotron with conspiracy to commit commodities fraud between 2008 and 2013, in violation of 18 U.S.C. § 1349. The government alleges that Mr. Flotron and his co-conspirators "placed Trick Orders for precious metals futures contracts on COMEX, that is, large orders which FLOTRON and his co-conspirators entered with the intent, at the time they entered the orders, to cancel before execution." ECF No. 58, ¶ 14.

On March 8, 2018, the government filed a motion *in limine* seeking to introduce evidence of Mr. Flotron's trading activity prior to the alleged conspiracy period (ECF No. 107), which the defense has opposed. ECF No. 135. The government argued that the admission of such evidence

would not be prejudicial to Mr. Flotron because "the conduct is the same as that charged in the conspiracy and is probative of the defendant's knowledge and intent." ECF No. 107 at 4. Then, on March 16, 2018, less than a month before trial, the government sent defense counsel another letter providing notice that it also intends to introduce at trial conduct that is completely unrelated to the allegations in this case:

> The government writes to inform you that it intends to introduce certain evidence in its case-in-chief, pursuant to Rule 404(b) of the Federal Rules of Evidence. Specifically, the government intends to introduce evidence (both testimonial and documentary) regarding front-running activity engaged in by Mr. Flotron. The government notes that it has identified certain exhibits related to this topic on its exhibit list (for example, GX 055 and GX 056).

Government's Letter to Defendant, dated March 16, 2018 (Exh. A). The government's letter also states that "to the extent the defense contests the issue of intent, motive, or Mr. Flotron's ability to control or move certain markets, the government reserves the right to introduce evidence of Mr. Flotron's front-running activity in its rebuttal." *Id.*

## ARGUMENT

### A.   Legal Standard

Under Rule 404(b)(1) of the Federal Rules of Evidence, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Under Rule 404(b)(2), however, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

In determining whether to admit uncharged conduct under Rule 404(b), courts consider:

> (1) whether the evidence is offered for a proper purpose within the Rule, (2) whether "the evidence [is] relevant to a disputed issue; (3) [whether] the probative value of the prior act evidence substantially outweigh[s] the danger of its unfair prejudice;" and (4) whether a limiting instruction would be appropriate.

*United States v. Ferguson*, 246 F.R.D. 107, 114 (D. Conn. 2007) (citing *United States v. Lombardozzi,* 491 F.3d 61, 78 (2d Cir. 2007)).

      B.      <u>The Government's Proposed Evidence Should be Excluded Under Rule 404(b)</u>

The government asserts that "front-running activity engaged in by Mr. Flotron" is permissible 404(b) evidence because it is proof of Mr. Flotron's motive and intent and would rebut an argument that Mr. Flotron did not have the "ability to control or move certain markets." (Exh. A.). More is required. The government cannot justify the admission of its proposed evidence by simply pointing to permissible evidentiary purposes listed in Rule 404(b)(2) – it must also establish the relevance of such evidence. *See United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002) ("Knowledge and intent are permissible purposes for which courts can admit evidence of prior acts. . . . Our inquiry does not end there, however, because the government still must establish the relevance of the evidence to the issue in dispute."); *United States v. Kahale*, 789 F. Supp. 2d 359, 385 (E.D.N.Y. 2009), *aff'd sub nom. United States v. Graham*, 477 F. App'x 818 (2d Cir. 2012) ("While the government intends to offer this other act evidence for an admittedly proper purpose – namely, to show knowledge, intent, and lack of mistake or accident, this does not end the inquiry. Rather, the court must also determine whether the proffered evidence is relevant to that proper purpose . . . ." (internal citations omitted)); *United States v. Benedetto*, 571 F.2d 1246, 1248 (2d Cir. 1978) ("The Government must do more than demonstrate that the evidence is not offered solely to show that the defendant is a bad person. Stopping the analysis there would ignore the fundamental precept that any evidence must be relevant to some issue in the trial.").

To establish that uncharged conduct is relevant to knowledge or intent, the government must demonstrate that it is sufficiently similar to the conduct for which the defendant has been charged. *See Garcia*, 291 F.3d at 137 ("The government must identify a similarity or connection

between the two acts that makes the prior act relevant to establishing knowledge of the current act."). "If the government cannot identify a similarity or some connection between the prior and current acts, then evidence of the prior act is not relevant to show knowledge and intent." *Id.*; *see also Kahale*, 789 F. Supp. 2d at 385 ("[T]he relevance of the other-act evidence turns on the existence of a 'close parallel' between that other act evidence and the charged conduct."); *United States v. Kasouris*, 474 F.2d 689, 692 (5th Cir. 1973) ("Similarity, being a matter of relevancy, is judged by the degree in which the prior act approaches near identity with the elements of the offense charge."). In other words, "[t]he government may not invoke Rule 404(b) and proceed to offer, carte blanche, any prior act of the defendant in the same category of crime." *Garcia*, 291 F.3d at 137.

A threshold deficiency in the government's letter is that it fails to define "front-running." This is no surprise given that the term "front-running" is applied to a wide variety of conduct. No universal definition appears to exist. A UBS compliance manual that has been marked as a government exhibit vaguely states the following:

> Front-Running – UBS-IB employees must not exploit confidential information about clients' transactions for prior execution of transactions for his/her own account or for the account of UBS. In Switzerland, Parallel- and After-Running are also considered as abusive behaviour.

GX 013 at UBS _ZINC_ 000065253. Various regulators, however, define front-running differently. *See, e.g.*, CFTC Glossary, available at http://www.cftc.gov/ConsumerProtection/EducationCenter/CFTCGlossary/index.htm#F (defining front-running as "taking a futures or option position based upon non-public information regarding an impending transaction by another person in the same or related future or option"); FINRA Rule 5270(a) (prohibiting members from trading if they have "material, non-public market information concerning an imminent block transaction in that security," until that

block transaction becomes public). Additionally, the government's cooperating witness, Kar-Hoe "Mike" Chan, provides yet another view on the meaning of the term. *See* Notes from March 30, 2015 Government Interview of Chan, at 4 ("Chan described front running as buying or selling in front of a take profit order. Front running will put a trader in position to profit with low risk if the price goes up."). It is also unclear whether any alleged front-running the government would seek to introduce at trial was illegal or was known to be improper. Accordingly, the government cannot establish that any purported front-running closely parallels the charges in the Superseding Indictment.

In any event, none of the aforementioned definitions describe activity similar to the allegation in this case that Mr. Flotron "placed Trick Orders for precious metals futures contracts on COMEX, that is, large orders . . . with the intent, at the time they entered the orders, to cancel before execution." ECF No. 58, ¶ 14. Moreover, the alleged front-running activity the government appears interested in introducing did not even occur in the same market as the alleged conduct underlying the conspiracy charge. The activity alleged in the Superseding Indictment concerns the "precious metals futures market," whereas any purported "front-running" would presumably only occur in the spot market. The government cannot establish an adequate link between the two sets of conduct simply because both broadly relate to alleged fraudulent trading activity. *See, e.g.*, *United States v. Fasciana*, 226 F. Supp. 2d 445, 458-59 (S.D.N.Y. 2002) (excluding 404(b) evidence when it was "related [to the charged conduct] only in the most general sense - alleged handling of client funds in a manner inconsistent with the rights, instructions and/or expectations of the client" because "[t]he details of the alleged mishandling [were] quite different"); *Garcia*, 291 F.3d at 138 (finding that the district court abused its discretion in allowing in evidence of a defendant's prior conviction for selling cocaine

in a trial regarding a separate drug deal because "[t]he only similarity between the two drug transactions . . . [was] that both involved cocaine"); *United States v. Tubol*, 191 F.3d 88, 96 (2d Cir. 1999) (finding that the district court erred in admitting evidence that the defendant once planted a bomb in Israel when he was on trial for robbing a bank in New York by using a hoax bomb because "[t]here [was] no proof that the hoax bomb and the Israeli bomb shared any characteristics beyond the word 'bomb' or that [the defendant] used them in similar ways").

Further, even if front-running activity sufficiently paralleled the conduct described in the Superseding Indictment, the two exhibits identified by the government fail to support the allegation that *Mr. Flotron* actually engaged in front-running. GX 055 is an email from Niall ORiordan to six UBS employees specifically pertaining to silver wherein ORiordan states that "[f]ront running orders *in the back books* is a massive NO," and instructs the employees to "keep the positions in the front book and refrain from messing about in the backs." (emphasis added). Thus, as Chan has explained to the government, this email simply reflects that UBS traders were instructed to conduct such activity in UBS's front books. *See* Notes from March 30, 2015 Government Interview of Chan, at 13 ("ORiordan told everyone to keep prepositioning in the front books and suggested that it was alright as long as it was in the front book."). More importantly, Chan has explained that Mr. Flotron's only connection to the alleged incident underlying the email was his participation in a rumor mill:

> This email may have been sent to the PM traders following a trading incident involving a UBS client, [Company X]. Andy Flotron told Chan that Ralf Klonowski, a FX trader, told Sergio Soler about the [Company X] fixing. Soler executed silver trades on Soler's personal account. Flotron also told Chan that the information regarding the [Company X] fixing was leaked to UBS FX traders. There was a rumor that Soler used the proceeds from the silver trade to buy a nice house.

Notes from April 28, 2015 Government Interview of Chan, at 5; *see also* Notes from March 30, 2015 Government Interview of Chan, at 13 ("The person *least involved* in this [alleged front-running incident] was Flotron since he covered the gold desk." (emphasis added)). Notably, the second proposed government exhibit regarding front-running is an email chain, marked as GX 056, that is also specific to silver and discusses the publication of a monthly UBS report.

Accordingly, the government's proposed evidence is not relevant to Mr. Flotron's knowledge or intent and should be excluded under Rule 404(b).

        C.        The Government's Proffered Evidence Should Also Be Excluded Under Rule 403

Any limited probative value of evidence concerning alleged front-running would be substantially outweighed by the unnecessary distraction it would cause during trial and the unfair prejudice to Mr. Flotron, and thus should be excluded under Rule 403. When analyzing uncharged conduct under Rule 403, courts are mindful about whether its admission would result in a "trial within a trial." *See Ferguson*, 246 F.R.D. at 116 (excluding uncharged conduct under Rule 403 because it would "risk diverting the jury's attention . . . and it risk[ed] creating a trial within a trial on [the] issue"); *Ricketts v. City of Hartford*, 74 F.3d 1397, 1414 (2d Cir. 1996) (affirming the district court's decision to exclude evidence that would have created a "trial within a trial" and "would have been more confusing than helpfully probative"); *United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984) (upholding the exclusion of relevant evidence when the district court was concerned about its admission creating a trial within a trial); *United States v. Green*, No. 12CR83S1235, 2017 WL 4803957, at *4 (W.D.N.Y. Oct. 25, 2017) (excluding relevant evidence when "its probative value [was] substantially outweighed by the danger of unfair prejudice, confusion of the issues, and the need to conduct a trial within a trial").

7

Here, the government's proposed evidence is a textbook example of the type of unrelated conduct that would lead to a confusing and prejudicial trial within a trial. As discussed above, although it is clear that front-running involves different conduct than that for which Mr. Flotron has been charged, its precise definition remains murky. Thus, the parties would likely have to spend a considerable amount of time at trial describing the contours of the purported bad conduct on top of arguing whether Mr. Flotron engaged in such conduct at UBS. The government should not be permitted to pile on to the serious and complex spoofing allegations it has already lodged against Mr. Flotron by introducing evidence pertaining to a separate theory of alleged misconduct, especially when it is unclear whether such conduct is even illegal.

Not only would this sideshow completely confuse and distract the jury, but it would effectively require Mr. Flotron to prepare for an additional trial within a trial on allegations that are unrelated to the Superseding Indictment. *See Kahale*, 789 F. Supp. 2d at 385-86 (defendant's concerns about "multiple 'mini-trials' within the trial [were] well-founded" because "[his] anticipated efforts to defend the legitimacy of [unrelated transactions] [would] necessarily result in delay, confusion of the issues, and may mislead the jury to make a determination of guilt based on propensity"); *Fasciana*, 226 F. Supp. 2d at 459 (excluding evidence that would "lead to a confusion of the issues and unduly lengthen the trial while providing information that appear[ed] to be only tenuously connected to [the defendant's] knowledge and intent with respect to the scheme charged in the Indictment"). Nor can prejudice of this degree be cured with a limiting instruction. *See United States v. Haywood*, 280 F.3d 715, 724 (6th Cir. 2002) ("A limiting instruction will minimize to some degree the prejudicial nature of evidence of other criminal acts; it is not, however, a sure-fire panacea for the prejudice resulting from the needless admission of such evidence."); *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)

("[T]he balancing required by Rule 403 for all evidence would not be needed if a limiting instruction always insured that the jury would consider the evidence only for the purpose for which it was admitted."); *United States v. Garcia–Rosa*, 876 F.2d 209, 222 (1st Cir. 1989), *judgment vacated in part sub. nom. by Rivera–Feliciano v. United States*, 498 U.S. 954 (1990) ("[T]he prejudice in this case was so severe and unfair that it cannot be remedied merely through a limiting instruction. In fact, if limiting instructions could remedy all such errors, the government would easily be able to circumvent Rules 404(b) and 403.").

Accordingly, the Court should preclude the government from introducing at trial evidence concerning alleged "front-running activity."

## CONCLUSION

For the foregoing reasons, the defendant respectfully requests that the Court exclude 404(b) evidence of alleged "front-running activity."

    Respectfully submitted,

    GREENBERG TRAURIG, LLP

By: /s/ Marc L. Mukasey
Marc L. Mukasey (ct29885)
Nathan J. Muyskens (phv09472)
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-6832
Facsimile: (212) 801-6400
*Attorneys for Defendant Andre Flotron*

**AFFIRMATION OF SERVICE**

I hereby certify that on March 19, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
March 19, 2018

/s/ Marc L. Mukasey
Marc L. Mukasey (ct29885)
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-6832
Facsimile: (212) 801-6400
Email: mukaseym@gtlaw.com