UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ANDRE FLOTRON,<br><br>                Defendant. | S1 17 Cr. 220 (JAM)<br><br>March 28, 2018 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE
EVIDENCE OF ALLEGED FRONT-RUNNING ACTIVITY**

    Defendant Andre Flotron respectfully submits this reply in further support of his Motion *in Limine* to Preclude Evidence of Alleged Front-Running Activity (ECF No. 131).

**DISCUSSION**

    I.    <u>The Government's Proposed Evidence Should be Excluded Under Rule 404(b)</u>

    As an initial matter, Mr. Flotron has not "concede[d] that the Government is not offering the front-running evidence for the purpose of proving his bad character or criminal propensity." ECF No. 171 ("Gov't Opp.") at 4. That is precisely the concern with introducing improper and prejudicial Rule 404(b) evidence. Instead, the Defense argued that the government cannot introduce uncharged acts merely because one of the permissible evidentiary purposes identified in Rule 404(b)(2) will be in dispute a trial. *See United States v. Fasciana*, 226 F. Supp. 2d 445, 455 (S.D.N.Y. 2002) (when the government sought to introduce uncharged acts to prove the disputed issues of "intent, knowledge and absence of mistake," the "pertinent questions" were whether the evidence was relevant to such purposes and whether its admission would be unfairly prejudicial); *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014) ("Once the proponent identifies a non-propensity purpose that is 'at issue' in the case, the proponent must next explain

how the evidence is relevant to that purpose. This step is crucial."); *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009) (even though the government claimed that its 404(b) evidence was relevant to the disputed issues of knowledge and intent, its admission amounted to "propensity evidence in sheep's clothing").

Although the government has identified facially proper purposes for its proposed evidence, it has failed to demonstrate the "existence of a 'close parallel'" between alleged front-running and alleged spoofing, and therefore has not shown that its proposed evidence is relevant. *See United States v. Kahale*, 789 F. Supp. 2d 359, 385 (E.D.N.Y. 2009), *aff'd sub nom. United States v. Graham*, 477 F. App'x 818 (2d Cir. 2012). For example, the government relies on the fact that a UBS compliance training module categorizes both spoofing and front-running as "Abusive Trading, Disruptive Conduct and . . . Illegal Practices." Gov't Opp. at 2 (citing GX 010). However, this document also places a litany of other activity in the same category, including:

- "Pre-arranging trades when not permitted by exchange rules"
- "Wash or 'Fictitious' Trading"
- "Price Manipulation or Attempted Manipulation (including 'cornering' or 'squeezes')"
- "Disorderly, Disruptive or Overly Aggressive Trading"
- "Compensation Trading"
- "Engaging or attempting to engage in any type of fraud, dishonest or deceitful conduct"

*See* GX 010. Thus, the inclusion of both spoofing and front-running in this list hardly demonstrates that the practices are similar.[1]

---

[1] Further, a bank's training or compliance materials should not be mistakenly used to define the criminal law. *See, e.g.*, *United States v. Mix*, No. 12-CR-171, 2014 WL 2625034, at *7 (E.D. La. June 12, 2014) (jury instructed that, to the extent a company advised its employees that certain actions "could expose an employee to criminal prosecution or punishment . . . such statements are not statements of the applicable law."); *United States v. Shapiro et al.*, No. 3:15-cr-155 (D. Conn.), May 9, 2017 Trial Tr. at 274:17-275:14 ("I readily agree that these men are not on trial for violating those aspirational precepts . . . . The lines have to be clear. They have to be clear. It's not a

The government also contends that the alleged spoofing and front-running schemes are sufficiently alike because they involved the same people (namely, Mr. Flotron and Chan), occurred on the same UBS trading desk during a similar time period, and both related to "exploitation of knowledge about price movement." (Gov't Opp. at 7-8). However, these superficial details do nothing to adequately compare the actual *conduct* underlying each alleged scheme. *See, e.g.*, *Fasciana*, 226 F. Supp. 2d at 458-59 (excluding 404(b) evidence when it was "related [to the charged conduct] only in the most general sense - alleged handling of client funds in a manner inconsistent with the rights, instructions and/or expectations of the client" because "[t]he details of the alleged mishandling [were] quite different"); *United States v. Hatfield*, 685 F. Supp. 2d 320, 323 (E.D.N.Y. 2010) (evidence of "separate, discrete incidents of alleged fraud or deceit" were inadmissible because their only purpose was to demonstrate propensity); *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) ("The court abuses its discretion if the evidence is not sufficiently similar to the charged conduct or if the chain of inferences necessary to connect [the] evidence with the ultimate fact to be proved [is] unduly long." (citation omitted)).

Equally unavailing is the government's argument that front-running evidence is relevant because it would undermine the defense theory that that there were legitimate purposes behind the alleged spoofing transactions. (Gov't Opp. at 9). Even if the government could adequately demonstrate what supposed front-running took place and prove that Mr. Flotron engaged in such conduct, such evidence would have no bearing on whether there are permissible and bona fide reasons to engage in the trading activity described in the Superseding Indictment. Notably, by the government's own description of front-running, it has absolutely nothing to do with cancelling orders, entering orders on both sides of the market, or creating market imbalances, all of which

---

question of what was in the mind of a committee at [the bank] that sat down to put together an aspirational statement that might appeal to customers. We're talking about the line that separates criminal from non-criminal.").

the government has labeled as essential characteristics of its charged conspiracy conduct. As summarized by the Court, the government's case is premised on "conduct involving the creation of a false impression of supply and demand." ECF No. 142 at 9. Accordingly, there is no basis to suggest that purported front-running is relevant toward the intent at issue in this case. Neither is front-running evidence necessary or even instructive on the generic economic point that change in supply and demand may impact price. Thus, the purported 404(b) evidence is not probative of knowledge as the government also suggests.

Further, the cases the government cites are inapposite. One case, *United States v. Orefice*, No. 98 CR. 1295 (DLC), 1999 WL 349701 (S.D.N.Y. May 27, 1999), did not even involve Rule 404(b). All three schemes at issue there were charged in the indictment, and the case holding involved the defendant's motion to sever the schemes. *See id.* at *5-7. The court's dicta about whether those alleged schemes might be sufficiently similar under Rule 404(b) was not briefed by the parties or decided by the court. Next, *United States v. Aminy*, 15 F.3d 258 (2d Cir. 1994), does not support the government because it merely stands for the basic proposition that proper Rule 404(b) evidence must be sufficiently similar to the charged conduct. Not surprisingly, *Aminy* allowed evidence that the defendant possessed heroin packaged as a dealer's sample when he was arrested at an airport picking up a large amount of heroin. *Id.* at 260-61. Finally, *United States v. Rutkoske*, No. 03 CR. 1452 (RCC), 2005 WL 3358596 (S.D.N.Y. Dec. 8, 2005), strengthens Mr. Flotron's motion that any evidence of supposed front-running should be precluded because it is not sufficiently similar to the charged spoofing conduct. *Rutkoske* allowed Rule 404(b) evidence concerning a defendant's manipulation of a second stock where the indictment charged sufficiently similar manipulation of another stock. *Id.* at *2. The court explained that the connected schemes were "similar in that both display an effort to manipulate a

'thinly-traded' stock by buying out offers below a predetermined target price." *Id.* This degree of similarity is precisely what is absent when comparing unrelated front-running conduct to the alleged spoofing. In addition, *Rutkoske* further explained that the schemes concerning the two thinly-traded stocks "both required the cooperation of brokers and market-makers, lured by the promise of personal financial gain, to carry out the stock manipulation." *Id.* The mere assertion that Mr. Flotron and a government cooperator each did some acts that are claimed to be front-running while working at UBS does not transform such unrelated conduct to a scheme similar to spoofing. Because the government's proposed 404(b) evidence here is markedly different from spoofing, it should be precluded.

Finally, 404(b) evidence is only relevant if a jury could "reasonably conclude that the act occurred and that the defendant was the actor." *United States v. Gilan*, 967 F.2d 776, 780 (2d Cir. 1992) (citing *Huddleston v. United States*, 485 U.S. 681, 689 (1988)). Here, given the lack of clarity surrounding the law on front-running and the thin evidence proffered by the government, this requirement weighs in favor of exclusion. On this point, *United States v. Groysman*, No. 10CR459, 2011 WL 6131286 (E.D.N.Y. Dec. 8, 2011) is instructive. In *Groysman*, the defendant, an employee at a medical equipment retailer (EGA), was alleged to have submitted fraudulent reimbursement claims to insurance companies that inflated the prices of equipment that EGA had purchased. *Id.* at *1. The government sought to introduce evidence relating to the defendant's prior employment at another medical equipment company ("Fair Price"), which had been sued in a civil RICO case relating to a similar alleged scheme. *Id.* The government argued that because the two schemes were "essentially the same," evidence of the Fair Price scheme was relevant to the defendant's knowledge and intent in the EGA scheme. *Id.* at *1-2. Specifically, the government proffered that it would prove that the defendant engaged in

5

fraud at Fair Price "by submitting various Fair Price invoices, claims forms, checks, and testimony from an alleged co-conspirator." *Id.* at *1. In denying the government's motion, the court recognized that despite the purported similarities between the two alleged schemes, a second trial would essentially be necessary to establish whether the Fair Price scheme in fact existed. *Id.* at *2 ("Even assuming the invoices and claims were processed identically in both alleged schemes, the government's position would amount to a separate trial to prove the earlier alleged scheme to have in fact been a scheme. Only then could a comparison be made between the two . . . ."). Similarly, proof of a front-running scheme will require entirely different evidence than that which will be used for the alleged spoofing scheme. Further, Mr. Flotron would aggressively contest any allegation at trial that he engaged in front-running, and such defense would require yet another set of evidence. Thus, a second trial would effectively result – and one that would ultimately show that the two alleged schemes are wholly unrelated.

Accordingly, the government's proposed evidence is not relevant to Mr. Flotron's knowledge or intent and should be excluded under Rule 404(b).

II.     The Government's Proffered Evidence Should Also Be Excluded Under Rule 403

The government argues that a limiting instruction would cure any prejudice, and its Rule 404(b) evidence would be "discrete." (Gov't Opp. at 10). This strains credulity. Front-running activity at UBS and other banks was thoroughly investigated and debated during the government's foreign exchange investigation that continued for years. The suggestion that Mr. Chan would be able to sum up the concept, even at a superficial level, in a "discrete" fashion is disconcerting. There is not a commonly accepted distinction between improper "front-running" and proper "pre-positioning" in the precious metals market. Expert witnesses would vehemently disagree. Indeed, Mr. Chan himself attempted to explain the murky distinction between front-running and prepositioning in one of his interviews with the government in this case. *See* Notes

6

from March 30, 2015 Government Interview of Chan, at 4. Further, it is unclear to what extent any front-running conduct was legal and accepted in the precious metals and foreign exchange markets. *See* Colleen Powers, *Filling the Regulatory Void in the Fx Spot Market: How Traders Rigged the Biggest Market in the World*, 43 Fordham Urb. L.J. 139, 181 (2016) ("Although front-running is illegal in other markets, in the FX market, reports have characterized this practice in a number of ways such as 'part of the game' in FX trading with 'absolutely no legal repercussions' to 'bad practice' to 'unacceptable.'").

Tellingly, the government makes no attempt to distinguish the litany of cases cited by the defendant where courts excluded evidence under Rule 403 because its admission would create a "trial within a trial." Indeed, Mr. Flotron would likely need to call fact and expert witnesses to testify about how market participants viewed "front-running" in precious-metals futures trading during the relevant period. Additionally, the defense would need to review trading data to determine, among other things, whether the trader simply provided a good fill for a large customer order or filled this same larger order in a manner that resulted in an inferior fill with greater actual profits for that trader. This is precisely the outcome that courts take caution to avoid. *See United States v. Ferguson*, 246 F.R.D. 107, 116 (D. Conn. 2007) (excluding uncharged conduct under Rule 403 because it would "risk diverting the jury's attention . . . and it risk[ed] creating a trial within a trial on [the] issue").

Accordingly, because the unfair prejudice would outweigh and potential probative value, the Court should preclude the government from introducing any evidence concerning alleged "front-running activity."

**CONCLUSION**

For the foregoing reasons, the defendant respectfully requests that the Court exclude 404(b) evidence of alleged "front-running activity."

                                                Respectfully submitted,

                                                GREENBERG TRAURIG, LLP

                                         By:  /s/ Marc L. Mukasey
                                                Marc L. Mukasey (ct29885)
                                                Nathan J. Muyskens (phv09472)
                                                200 Park Avenue
                                                New York, NY 10166
                                                Telephone: (212) 801-6832
                                                Facsimile: (212) 801-6400
                                                *Attorneys for Defendant Andre Flotron*

## AFFIRMATION OF SERVICE

I hereby certify that on March 28, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
       March 28, 2018

                                             /s/ Marc L. Mukasey
                                            Marc L. Mukasey
                                            Greenberg Traurig, LLP
                                            200 Park Avenue
                                            New York, NY 10166
                                            Telephone: (212) 801-9200
                                            Facsimile: (212) 801-6400
                                            Email: mukaseym@gtlaw.com