UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ANDRE FLOTRON,<br><br>                Defendant. | S1 17 Cr. 220 (JAM)<br><br>April 9, 2018 |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE
EVIDENCE OF ALLEGED FRONT-RUNNING ACTIVITY**

Defendant Andre Flotron respectfully submits this memorandum of law in further support of his Motion *in Limine* to preclude evidence of alleged front-running activity (ECF No. 140). Defense counsel's anticipated cross-examination of Kar-Hoe "Mike" Chan directly relates to his credibility as a cooperating witness and in no way places any of the evidentiary purposes listed in Rule 404(b) in issue.

## BACKGROUND

On March 16, 2018, the government sent defense counsel a letter providing notice that it seeks to introduce at trial evidence of Mr. Flotron allegedly engaging in "front-running activity" during his time at UBS. In response, Mr. Flotron filed a motion *in limine* seeking to preclude such evidence on the grounds that its introduction would violate Rules 404(b) and 403 of the Federal Rules of Evidence. ECF No. 140. At oral argument held on March 29, 2018, the Court granted Mr. Flotron's motion due to the lack of factual similarities between alleged front-running and alleged spoofing and the significant prejudice that front-running evidence would impose on Mr. Flotron:

> I'm going to grant the motion, defendant's motion to preclude the front-running activity. I'm convinced by the reasons stated in the papers and here at oral

> argument today that there is a significant prejudice issue in terms of introducing new misconduct by Mr. Flotron here that's not factually overlapping with the charged misconduct of the commodities fraud. And I think the relevance here is very tenuous and that certainly under 403 would be outweighed for the potential prejudicial value for the reasons stated by Mr. Flotron. That's without prejudice, however, in the event there's a turn of events at trial in which the door could be opened to this issue in some specific way that I can't imagine right now. But I am very concerned about just generally putting on front-running evidence in the case, given all the concerns that I've heard.

Mar. 29, 2017 Conf. Tr. at 100:14-101:5. This ruling was memorialized in an Order dated April 3, 2018. ECF No. 178. Seizing on the Court's comment that its ruling could change if defense counsel somehow "opens the door" to front-running evidence, the government subsequently informed the defense that it plans to introduce such evidence if Chan is cross-examined about any manipulative trading activity other than that described in the Superseding Indictment. At jury selection held on April 6, 2018, the government further explained that Chan believes that all of the defense's proposed cross-examination topics relate back to the front-running tactics that he purportedly learned from Mr. Flotron, and that therefore it would be misleading for the jury to only hear "half of the story" about Chan's improper tactics. The defense, however, should be permitted to cross-examine the government's lead witness on issues directly relating to his credibility without improper and unrelated 404(b) evidence getting introduced against Mr. Flotron as a result. The defense's proposed cross-examination would not tell a misleading story. How Chan allegedly learned to front-run is completely irrelevant to the fact that he engaged in and admitted to coordinating schemes with a trader from another bank that entailed deceiving and telling lies to clients. The purported inspiration of Chan's misconduct is irrelevant to this impeachment story and would only serve to improperly prejudice Mr. Flotron.

**ARGUMENT**

A.     Legal Standard

As the Second Circuit has recognized, allowing defense counsel to effectively cross-examine a cooperating witness on issues related to his or her credibility is critical to a fair trial:

> When a witness in a criminal case is being questioned as to his possible motives for testifying falsely wide latitude should be allowed in cross-examination. Cross-examination is proper when its purpose is to reveal bias or interest on the part of the witness being examined. . . . Indeed, where the principal witnesses appearing in behalf of the prosecution have a criminal record or have engaged in illegal practices and are accomplices to the crime charged, it is essential to a fair trial that the court allow the defendant to cross-examine such witnesses as widely as the rules of evidence permit.

*United States v. Masino*, 275 F.2d 129, 132-33 (2d Cir. 1960); *see also United States v. Rivera*, 799 F.3d 180, 184-84 (2d Cir. 2015) (the Sixth Amendment confers "the right to a meaningful opportunity to present a complete defense at trial and to confront witnesses, including by impeach[ing] the credibility of a prosecution witness by cross-examination" (citations omitted)); *see also* Fed. R. Evid. 607-609.

As a completely separate legal principle, defendants are protected from prejudicial propensity evidence under Rule 404(b)(1) of the Federal Rules of Evidence, which provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Under Rule 404(b)(2), however, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

B.     Defense Counsel's Proposed Cross-Examination of Chan Does Not Open the Door to Impermissible 404(b) Evidence

The government has made it abundantly clear that Chan will be its star witness at trial. Thus, defense counsel should not be curtailed from cross-examining Chan on matters related to

his credibility – namely, his participation in the various forms of market manipulation and unlawful coordinated conduct completely unrelated to spoofing that he has been describing to the government over the past few years. Not only did Chan explicitly lie to clients in executing these schemes, but he backed up these lies by working in tandem with David Liew, a trader who was working at competitor Deutsche Bank, to corroborate one another's stories.

For example, Chan has admitted that while he was working in Singapore, he and Liew coordinated with one another in a practice that is colloquially known as "jamming stops." By way of explanation, in order to minimize losses, a client could give Chan or Liew a "stop-loss order," which is a specific floor price at which to sell a commodity in the event that prices begin to fall (*e.g.*, after buying 50 lots of gold at $100, the client may instruct Chan or Liew to sell the lots if the price of gold falls to $90). Chan and Liew could then "jam" this stop by intentionally pushing the price of gold down to $90, by executing a series of trades at the stop-loss price. If the customer later became suspicious, Chan would ask Liew to send a record of the pertinent transactions executed at Deutsche Bank in order to provide the customer with an independent source behind the price movement. This is known as "getting a print" from another trader.

Chan thoroughly described and conceded to "jamming stops" and "getting prints" in an interview with the government:

> In Chan's chats with Liew, they discussed information and specifics of stops and had coordinated strategy discussions. . . . With regards to coordinated trading, Liew asked Chan to push the market and to take on enough market size to help Liew push the market from the current market price. Chan agreed to push the market with Liew because UBS could benefit when Chan needed Liew to get a print or push the market. . . . Chan wanted to fill a stop loss and needed the print to justify filling the stop loss. Clients often required a print to justify the fact that Chan filled a stop loss that the client didn't want filled. With the print, the client was able to see the follow through in the market and see why the stop loss was executed.

Notes from April 27, 2015 Government Interview of Chan, at 11-12.

Chan also admitted that he sometimes justified prices to clients by coordinating lies with Liew as to what the high or low price for a certain commodity was that day. *See, e.g.*, Notes from April 28, 2015 Government Interview of Chan, at 4 ("Chan asked [] Liew if he could call 34.30 the hi in silver too. Chan stated that the high printed on CME was probably higher that 34.30 but Chan wanted Liew's help to justify the fill in case the client did not believe the high reached 34.30.").

Finally, Chan has broadly admitted to sharing and coordinating a variety of market strategies with Liew in order to move prices:

> Chan learned over time the "gaming" behind sharing spread information with competitors. . . . Chan and Liew discussed market strategy, spread strategy, and high/low strategy. They also discussed and agreed on market strategy because if you know the person and engage the same strategy, you increase the likelihood of moving the market by increasing or decreasing the price in a way to sustain momentum.

Notes from April 27, 2015 Government Interview of Chan, at 6, 12. Such coordination clearly violates the Sherman Act, which prohibits agreements that restrain trade. *See* 15 U.S.C. § 1.

Cross-examination of Chan on these topics will cast doubt on his credibility in several ways. First, the fact that Chan has already admitted to engaging in these practices is highly probative of his motivation to curry favor with the government and testify against Mr. Flotron in a manner that is satisfactory to the prosecutors in this case. Not only has Chan been let off the hook for his admitted role in spoofing, but also for the far more offensive conduct described above. Thus, defense counsel is permitted to introduce extrinsic evidence that sheds light on his motive in taking the witness stand. *See United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976) ("The law is well settled in this Circuit, as in others, that bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely."); *United States v. James*, 609 F.2d 36, 46 (2d Cir. 1979) (subject to Rule 403, extrinsic

evidence regarding a government witness's other potential crimes should have been admitted because "[t]he stronger the case against [the witness], and the more likely he was to be convicted, the stronger would be his motive to cooperate with the government in the hope of receiving more lenient treatment"). Second, Chan's deceitful behavior is squarely probative of his character for truthfulness, and thus defense counsel is permitted to inquire into this conduct on cross-examination pursuant to Federal Rule of Evidence 608(b). *See, e.g.*, *United States v. Oti*, 872 F.3d 678, 693–94 (5th Cir. 2017) ("Questions about past specific instances of misconduct pertaining to fraud are admissible under Federal Rule of Evidence 608(b) because they are clearly probative of truthfulness or untruthfulness." (citation omitted)).

While the government does not seek to preclude defense counsel from cross-examining Chan on these topics, it takes the position that all of these matters are somehow related to front-running and therefore this line of questioning should "open the door" to the admission of alleged front-running activity by Mr. Flotron. This position, however, conflates Mr. Flotron's rights under the Confrontation Clause with the prohibition against propensity evidence laid out in Rule 404(b). The Court has already ruled that front-running evidence is inadmissible given that it does not factually overlap with the charged offense and would impose "significant prejudice" on Mr. Flotron. *See* Mar. 29, 2017 Conf. Tr. at 100:14-24; ECF No. 178 at 1. The cross-examination of a government witness (or any other defense strategy) only permits the of use 404(b) evidence when it puts one of the issues listed in 404(b)(2) in dispute – in this case, *Mr. Flotron's* motive, knowledge or intent. *See, e.g.*, *United States v. Joe*, No. 07 CR. 734 (JFK), 2008 WL 2810169, at *1 (S.D.N.Y. July 21, 2008) (ruling that a defense that would place the *victim's* knowledge at issue would not open the door to 404(b) evidence that would be probative of the *defendant's* knowledge and intent); *compare United States v. Aminy*, 15 F.3d 258, 260 (2d Cir. 1994)

(defendant's other narcotics deals admissible to prove motive or intent). In other words, the government is not suddenly permitted to introduce improper propensity evidence against a defendant simply because the credibility of one of its witnesses has been attacked.

For example, in *United States v. Brik*, No. 15-CR-78, 2016 WL 3753080 (D. Minn. July 11, 2016), the defendant filed a motion *in limine* seeking to cross-examine a government witness about a prior assault conviction, and the government claimed that because the assault occurred while the witness was living with the defendant, such questioning could open the door to the defendant's role in the offense. *Id.* at *10. In response, the defendant argued that the proposed re-direct would violate Rule 404(b). *Id.* The court agreed with the defendant, finding that his involvement in the assault seemed irrelevant unless he testified:

> The rules of evidence permit Defendants to impeach [the witness] with his prior felony conviction, Fed. R. Evid. 609(a)(1)(A), but it is not clear at this time how Brik's involvement in the 2011 assault charge would be relevant to rehabilitating [the witness's] credibility. Certainly, if Defendant Brik testifies, the fact of his 2011 prior conviction would be admissible. While the Court permits Defendants to impeach [the witness] with his prior conviction, the Court defers ruling on the scope of the Government's redirect until after cross examination.

*Id.*

Similarly, in *United States v. Phillips*, 599 F.2d 134 (6th Cir. 1979), the defendant was charged with bank robbery, and a cooperating witness (Wood) testified that he and the defendant executed the plan together. Wood also testified that he robbed three other banks that year and that he provided the government with information on all of the robberies in exchange for only being prosecuted for one. *Id.* at 135. After defense counsel elicited testimony designed to show that Wood was motivated to falsely implicate the defendant in the charged robbery, the government was permitted on re-direct to establish that the defendant was also involved in the other three bank robberies to which Wood confessed. *Id.* at 135-36. The Sixth Circuit reversed

the defendant's conviction, finding that the government's re-direct of Wood violated Rule 404(b):

> [T]he testimony [does not] rebut the inference that Wood had a motive to accuse the defendant falsely. The challenged testimony is not logically relevant to this line of questioning. Wood's testimony implicating Phillips in bank robberies other than the robbery for which Phillips was on trial was apparently offered as an attempt to "rehabilitate" Wood after his motive for testifying had been attacked. Questions on redirect designed to rehabilitate a witness by showing that the defendant had a general readiness or propensity to rob banks are just as objectionable under Rule 404(b) as such questions on direct.

*Id.* at 137; *see also United States v. Sanchez-Garcia*, 685 F.3d 745, 753 (8th Cir. 2012) (after a witness who was cross-examined about a prior conviction for fleeing from the police testified on re-direct that she only fled because she was with the defendant, who was an illegal alien, it was proper for the district court to strike the portion of the testimony concerning the defendant's immigration status).

Here, the government's proposed examination is even more inappropriate than that rejected in the aforementioned cases. The government contends that, in Chan's mind, the proposed cross-examination topics all relate back to front-running and that they therefore would open the door to allow Chan to explain that he learned about front-running from Mr. Flotron. According to the government, prohibiting such testimony would unfairly result in the jury only hearing "half of the story." This argument, however, is flawed in several ways.

First, the defense has no intention of misleading the jury by questioning Chan in a way that suggests that he was the mastermind behind any alleged front-running scheme. Nor will the defense argue that Mr. Flotron never engaged in front-running, or that Chan never learned about front-running from Mr. Flotron or observed him engage in it. That irrelevant topic, *i.e.*, whom Chan observed front-running or inspired his conduct, should have no place in this trial. In fact, the defense does not intend to ask any questions about front-running, which the government has

defined as "the practice of trading ahead of an anticipated client order in order to take advantage of expected price movement caused by the client order." ECF No. 171, at 2. Instead, the defense's proposed cross-examination is limited to exposing the fact that Chan and Liew conspired together to lie to and deceive clients, which is highly probative of Chan's credibility as a witness and his motive in testifying for the government. These numerous collusive activities put Chan in serious criminal jeopardy and led to his non-prosecution agreement with the prosecutors in this case.

Further, the government does not allege that Chan engaged in his schemes with Liew at the direction of Mr. Flotron, and the fact that Chan personally believes that the genesis of such conduct is the front-running activity he allegedly learned about while working in Stamford is completely irrelevant. Chan has blatantly admitted to lying to clients and coordinating such lies with Liew in order to increase profits. These concessions, which are directly relevant to Chan's credibility, should not open the door to the tenuous and self-serving back story of how prior training from Mr. Flotron on completely different trades purportedly led to Chan's endeavors with Liew. Not only would such testimony unfairly implicate Mr. Flotron in an alleged front-running scheme, but it would create the incredibly prejudicial impression that Mr. Flotron is also responsible for the far worse conduct that Chan engaged in with Liew.

In sum, Mr. Flotron should not be put in the position of sacrificing his Sixth Amendment rights in order to prevent the admission of evidence that the Court has already correctly determined is substantially more prejudicial than probative. ECF No. 178 at 1. Accordingly, the government should be precluded from introducing improper 404(b) evidence during the examination, including re-direct examination, of Chan.

**CONCLUSION**

For the foregoing reasons, the defendant respectfully requests that the Court preclude the government from introducing improper 404(b) evidence during the examination, including re-direct examination, of Chan.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:  /s/ Marc L. Mukasey
Marc L. Mukasey (ct29885)
Nathan J. Muyskens (phv09472)
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-6832
Facsimile: (212) 801-6400
*Attorneys for Defendant Andre Flotron*

**AFFIRMATION OF SERVICE**

I hereby certify that on April 9, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
      April 9, 2018

                    /s/ Marc L. Mukasey
                    Marc L. Mukasey (ct29885)
                    Greenberg Traurig, LLP
                    200 Park Avenue
                    New York, NY 10166
                    Telephone: (212) 801-6832
                    Facsimile: (212) 801-6400
                    Email: mukaseym@gtlaw.com