UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ANDRE FLOTRON,<br><br>Defendant. | S1 17 Cr. 220 (JAM)<br><br>April 10, 2018 |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE RELATED TO THE ENACTMENT OF THE DODD-FRANK ACT, ISSUANCE OF CFTC GUIDANCE, AND THE CME GROUP'S PUBLICATION OF AN ANTI-SPOOFING RULE**

Mr. Flotron respectfully submits this memorandum of law in opposition to the Government's Motion *in Limine* to preclude evidence related to the enactment of the Dodd-Frank Act, issuance of CFTC guidance, and the CME Group's publication of an anti-spoofing rule, filed April 8, 2018. ECF No. 185 (the "Motion *in Limine*"). Defendant should be permitted to introduce evidence of regulatory pronouncements during the conspiracy period that are highly relevant to issues of intent and good faith for Mr. Flotron and the alleged co-conspirators.

**BACKGROUND**

On March 26, 2018, the government and defense filed respective requests to charge. *See* ECF Nos. 166, 168. With respect to the pertinent time frame of the conspiracy, the defense requested an instruction (the "Straddling Instruction") that informs the jury that commodities fraud was not criminalized under 18 U.S.C. § 1348 until May 20, 2009 (the "Straddling Date"), and that the jury must therefore find that an agreement to commit commodities fraud existed after that date. *See* ECF No. 168 at 24. On March 30, 2018, the government filed a letter objecting to the Straddling Instruction, arguing that the jury need not be informed of the significance of the Straddling Date and instead should simply be instructed that they must find

that the conspiracy continued past such date. ECF No. 176. In response, the defense filed a letter arguing that it is critical that the jury be provided with a robust Straddling Instruction in order to avoid the possibility that Mr. Flotron is convicted exclusively on pre-enactment conduct. *See* ECF No. 180. Further, the defense explained that providing the jury with context for the Straddling Date is important given the likelihood that the government will attempt to use UBS compliance materials to show that Mr. Flotron should have known that his trading activity was unlawful. *Id.* at 5. The defense also described how it may rebut such an assertion by introducing evidence concerning the passage of Dodd-Frank and subsequent guidance from the CFTC and CME Group in order to establish that Mr. Flotron acted in good faith. *Id.* at 5-6.

On April 8, 2018, the government filed the Motion *in Limine*, arguing that the defense should be precluded from introducing evidence concerning: i) the July 2010 enactment of the Dodd-Frank Title 7 anti-spoofing provision, ii) the process by which the CFTC, after the passage of Dodd-Frank, issued interpretative guidance of the anti-spoofing provision, and iii) CME Group's August 2014 publication of its own anti-spoofing rule (collectively "the Proposed Evidence"). ECF No. 185 at 1. Specifically, the government contends that the defense should not be allowed to introduce the Proposed Evidence during cross-examination of counterparty witnesses, through the defense's expert witnesses, or through Mr. Flotron, should he choose to testify. *Id.* at 1-2.

## ARGUMENT

As an initial matter, the defense does not intend to admit the Proposed Evidence through its expert witnesses or the government's counterparty witnesses. Instead, the defense may introduce such evidence during the cross-examinations of James Oates (former Head of Compliance at UBS) and the government's cooperating witnesses (Kar-Hoe "Mike" Chan and

Sergio Soler), or through the direct examination of Mr. Flotron, in the event that he chooses to testify. The Proposed Evidence is highly probative of Mr. Flotron's intent and good faith as well as the states of mind of his alleged co-conspirators. Further, the Proposed Evidence provides necessary context for the government's compliance-related exhibits.

    A.  <u>The Proposed Evidence is Admissible Because it is Relevant to Intent and Good Faith</u>

Whether Mr. Flotron had the requisite intent to enter into a criminal conspiracy will be a hotly contested issue at trial. Although the government and defense dispute the appropriate substance of the Straddling Instruction, both parties agree that the jury should be instructed that it must find that the conspiracy existed after the Straddling Date. *See* ECF No. 166 at 28 (government's proposed instruction); ECF No. 168 at 24 (defendant's proposed instruction).

The Straddling Date, however, is not the only evidence that is relevant to Mr. Flotron's intent. In order to establish that Mr. Flotron "willfully" entered into a conspiracy, the government must prove that he acted with the intent to do something unlawful. *See, e.g., United States v. Campos*, 16-cr-395 (S.D.N.Y. June 22, 2016), ECF No. 140, at 27 ("To act willfully means to act deliberately and with a purpose to do something the law forbids."); *United States v. Shapiro*, 15-cr-155 (RNC) (D. Conn. June 1, 2017), ECF No. 462, at 67 ("To act willfully means to act purposely and with the intent to do something unlawful. Thus, a defendant enters into a conspiracy knowingly and willfully if he joins and participates in the conspiracy with knowledge of and the intent to further its unlawful objectives."). Further, because commodities fraud requires proof of the intent to defraud, *see, e.g., United State v. Coscia*, 14-cr-551 (N.D. Il. Nov. 3, 2015), ECF No. 85, at 20, Mr. Flotron's good faith, *i.e.*, his belief that his conduct was not unlawful, is a complete defense to commodities fraud and therefore to the conspiracy charge. *See, e.g., United States v. Shapiro*, 15-cr-155 (RNC) (D. Conn. June 1, 2017), ECF No. 462, at

48-49 ("Because an essential element of the crime charged in Counts Two and Three is intent to defraud, a defendant cannot be convicted if you find that he acted in good faith; in other words, that he held an honest belief his actions were permissible and not in furtherance of unlawful activity."); *United States v. Litvak*, No. 13-cr-19 (JCH) (D. Conn. Jan. 13, 2017), at 1502:9-17 (because intent to defraud was an essential element, the jury was instructed that they could not convict if they found that Litvak "acted in [] good-faith or held an honest belief that his actions as charged in a given count were proper and not in furtherance of any unlawful activity"); *see also United States v. Torres*, 604 F.3d 58, 65 (2d Cir. 2010) (in conspiracy cases, "the government must prove at least the degree of criminal intent necessary for the substantive offense itself" (citation omitted)).

      Mr. Flotron's intent and good faith do not become moot issues after the Straddling Date, as the government must prove that an illegal agreement existed beyond such date. Thus, the defense should be provided with considerable latitude in introducing evidence relevant to Mr. Flotron's good faith and intent throughout the entire conspiracy period. *See, e.g.*, *United States v. Brandt*, 196 F.2d 653, 657 (2d Cir. 1952) ("[S]ince [good faith] may be only inferentially proven, no events or actions which bear even remotely on its probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh any relevancy it might have." (internal citation omitted)); *United States v. Regan*, 937 F.2d 823, 827 (2d Cir. 1991) ("[When] there is little dispute concerning the [factual aspects of a transaction], the existence vel non of culpable intent or lack of good faith is a crucially important issue in the case."); *United States v. Copple*, 24 F.3d 535, 545 n.16 (3d Cir. 1994) ("Proving specific intent in mail fraud cases is difficult, and, as a result, a liberal policy has developed to allow the government to introduce evidence that even peripherally bears on the question of intent

. . . This policy extends in the other direction as well."); *United States v. Thomas*, 32 F.3d 418, 420–21 (9th Cir. 1994) ("[T]he general rule in mail fraud prosecutions is that the defendant should be permitted to offer any evidence which bears directly and not too remotely on his intention [to defraud], and the court should not exclude any evidence offered by accused which tends to refute the fraudulent intent charged."); *United States v. Caputo*, No. 03 CR 126-1, 2004 WL 5576653, at *2 (N.D. Ill. July 19, 2004) ("The existence of this FDA policy, Defendants' awareness of it, and Defendants' reliance on it could establish that they lacked the specific intent to commit fraud. . . . It is a jury, not the Court, who must decide whether Defendants pulled a bait-and-switch fraud or whether they were genuinely trying to do business in a complicated regulatory environment.").

Here, the passage of Dodd-Frank and subsequent interpretive guidance are highly probative of whether Mr. Flotron and his co-conspirators possessed the requisite intent to enter into a criminal conspiracy. While § 1348 was amended to cover commodities fraud as of the Straddling Date, it was far from obvious that entering trades that would be cancelled was criminal conduct at that time. Dodd-Frank was thereafter enacted in July 2010 (and became effective in July 2011), which amended the Commodities Exchange Act to prohibit the act of "spoofing." However, due to the confusion surrounding this term and the vast amounts of bona fide trading that it would technically cover, the CFTC issued final interpretive guidance in May 2013 explaining that "a spoofing violation will not occur when the person's intent when cancelling a bid or offer before execution was . . . as part of a legitimate, good-faith attempt to consummate a trade." *See* DX 196 (78 Fed. Reg. 31,890 at 31,896 (May 28, 2013)). Further, it was not until August 2014 – nine months *after* the conclusion of the alleged conspiracy period –

that CME Group published its own anti-spoofing rule defining what conduct was proscribed and what conduct was not. *See* DX 189 (CME Group RA 1405-5, at 5 (Aug. 28, 2014)).

Contrary to the government's assertion, the defense does not seek to introduce the Proposed Evidence in order to improperly argue the law to the jury. *See* Motion *in Limine* at 3. Instead, the Proposed Evidence will show that there was widespread confusion in the precious metals market as to what constituted spoofing during the conspiracy period, and thus it is probative of whether Mr. Flotron and any co-conspirator entered into an agreement to break the law.[1] The government concedes that if Mr. Flotron testifies, the Proposed Evidence may be admissible to establish his lack of fraudulent intent. *See* Motion *in Limine* at 7. However, Mr. Flotron's intent is a critical issue regardless of whether he testifies, and thus the defense should not be curtailed from introducing evidence that is probative of this point. *See Brandt*, 196 F.2d at 657. Further, Mr. Flotron is not the only individual whose intent will be relevant at trial. The government has charged Mr. Flotron with conspiracy, which requires proof that Mr. Flotron *and at least one co-conspirator* agreed to commit commodities fraud. *See, e.g.*, *United States v. Desimone*, 119 F.3d 217, 223 (2d Cir. 1997) (noting that a co-conspirator must have "the criminal intent necessary to render him a bona fide co-conspirator"); *United States v. Valle*, 807 F.3d 508, 522 (2d Cir. 2015) ("[I]t is impossible to determine beyond a reasonable doubt whether [any alleged co-conspirator] ever had the specific intent to commit a kidnapping. We have taken a bilateral approach to the crime of conspiracy: at least two people must agree."); *United States v. Bordelon*, 871 F.2d 491, 494 (5th Cir. 1989) ("Where only one party to the agreement possesses the required criminal intent, there has been no violation of the conspiracy statute.").

---

[1] That Mr. Flotron is no longer charged with substantive counts of spoofing does not diminish the relevance of the Proposed Evidence. *See* Motion *in Limine* at 4. It is clear that the theory behind the government's case is that Mr. Flotron entered into an illegal agreement to spoof. Thus, evidence that shows that it was unclear whether spoofing was criminal during the relevant time period is highly relevant, regardless of its context.

Thus, the defense should be permitted to use the Proposed Evidence during the cross-examinations of Chan and Soler, especially since both witnesses have already stated that they did not believe that spoofing was unlawful during the relevant time period. *See, e.g.*, Notes from April 28, 2015 Government Interview of Chan, at 9 (Chan "believed it was okay" to spoof); Notes from March 1, 2018 Government Interview of Soler, at 6 ("SOLER at the conclusion of the interview knew what he was doing was wrong. However, SOLER, maintained at the time he was practicing, he did not know what he was doing was wrong.").

Finally, the government's reliance on the exclusion of similar evidence in *Coscia* is misguided. Coscia was charged for conduct that occurred over the span of ten weeks, beginning in August 2011 – subsequent to both the passage of Dodd-Frank and the date upon which it became effective. *See United States v. Coscia*, 866 F.3d 782, 788 (7th Cir. 2017). Thus, evidence pertaining to the passage of Dodd-Frank was not at issue in the district court opinion to which the government cites. *See United States v. Coscia*, No. 14 CR 551, 2015 WL 6153602, at *1 (N.D. Ill. Oct. 19, 2015) (explaining that the government's motion *in limine* sought to exclude "rules and regulations relating to spoofing from certain financial markets, the [CFTC], and the Financial Conduct Authority"). Further, as the government correctly points out, Coscia *agreed* that he would not introduce the disputed evidence. *See* Motion *in Limine* at 3; *see also* Coscia, 2015 WL 6153602, at *1 ("Coscia has indicated that he does not intend to introduce such evidence at trial."). Thus, the language the government cites in its Motion *in Limine* is merely dicta. In any event, the district court in *Coscia* simply cited an accurate legal principle that "juries are the triers of fact only" and surmised that therefore "industry rules and regulations that attempt to define spoofing for the jury are irrelevant and likely to cause confusion." *Coscia*, 2015 WL 6153602, at *1. As explained above, the defense does not intend to use the Proposed

Evidence to instruct the jury on the law, but instead to provide the jury with evidence that is highly relevant to the key issues of intent and good faith.

Accordingly, the defense should be allowed to use the Proposed Evidence to refute the government's assertion that Mr. Flotron and his alleged co-conspirators acted with criminal intent and to establish that they engaged in their trading activities in good faith.

### B. The Proposed Evidence is Admissible as Context for the Government's Compliance Evidence.

The government intends to use UBS compliance materials to attempt to show that Mr. Flotron engaged in spoofing despite UBS's prohibition on such conduct. *See* ECF No. 138 at 22-23. According to the government, these documents are highly probative of Mr. Flotron's knowledge and intent. *See id.* at 24-26. The defense anticipates that the government will introduce such materials through Oates.

However, the term "spoofing" was not referenced in any UBS compliance document until mid-2012, well after the Straddling Date and the dates upon which Dodd-Frank was passed and took effect. And even at that time, the description of spoofing was unclear and inaccurate, which is consistent with the regulators' and market's ambiguous understanding of the scope of potentially criminal conduct. Thus, it would be misleading if the jury were left with the impression that UBS's compliance materials prohibited spoofing for the entire duration of the conspiracy period or the particular type of trading activities at issue in the case. While the defense does not believe that the government will intentionally try to create this false impression, it would be natural for jurors looking at compliance materials to assume that the guidance contained within was applicable for the entire pertinent time frame. Thus, the defense should be permitted to explain that the government's exhibits reflect revisions in UBS's compliance policies that were the result of corresponding changes in the law – a concept that is backed up by

the government's own witnesses. *See, e.g.*, Notes from March 1, 2018 Government Interview of Soler, at 2 ("*After* [Dodd-Frank] went into effect, SOLER recalled receiving compliance training on [spoofing] . . . ." (emphasis added)).

Accordingly, the defense should be allowed to use the Proposed Evidence in response to the government's admission of UBS compliance materials.

## CONCLUSION

For the foregoing reasons, the defense respectfully submits that the government's Motion *in Limine* should be denied.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: /s/ Marc L. Mukasey
Marc L. Mukasey (ct29885)
Nathan J. Muyskens (phv09472)
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-6832
Facsimile: (212) 801-6400
*Attorneys for Defendant Andre Flotron*

## AFFIRMATION OF SERVICE

I hereby certify that on April 10, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
April 10, 2018

      /s/ Marc L. Mukasey
Marc L. Mukasey
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: mukaseym@gtlaw.com