

Marc Mukasey
Tel 212.801.6832
Fax 212.754.8522
mukaseym@gtlaw.com

April 11, 2018

VIA CM/ECF

The Honorable Jeffrey A. Meyer
U.S. District Judge for the District of Connecticut
Richard C. Lee U.S. Courthouse
141 Church Street
New Haven, Connecticut 06510

Re: *United States v. Flotron*, S1 17 Cr. 220 (JAM)

Dear Judge Meyer:

This letter is respectfully submitted in response to the government's April 8, 2018 disclosure (ECF No. 187), pursuant to the Court's April 3, 2018 order regarding the proposed testimony of FBI Special Agent Jonathan Luca. The defense continues to object to Agent Luca's proffered testimony because the government has not resolved the issue of unfair prejudice arising from dual agent-expert testimony.

In discussing Mr. Flotron's motion in *limine*, at the pretrial conference on March 29, 2018, the Court expressed concern regarding the danger of unfair prejudice from Agent Luca's dual expert and fact witness testimony. Accordingly, the Court ruled that the government must "provide a revised summary of Agent Luca's anticipated expert testimony" and "if Agent Luca is to be dually called as a fact witness, [the government] shall identify the scope of and what exhibits he will testify to as a fact witness." Apr. 3, 2018 Order at 2 (ECF No. 178).

The government's new disclosure essentially abandons its February 16, 2018 Rule 16 disclosure, yet fails to identify the new proposed scope of Agent Luca's expert and fact testimony. The government states that instead of offering Agent Luca to discuss trading strategies and chat communications involving the defendant, it will: "call Special Agent Luca as its first witness to (1) provide overview testimony relating to the futures markets and futures trading generally and (2) admit certain exhibits into evidence (and provide related testimony)." Gov't Disclosure of April 9, 2018 at 1 (ECF No. 187). The government's disclosure is inadequate. The government does not state whether either of these topic areas will include fact testimony or expert testimony, and it fails to define the scope of the "overview" and exhibit-based testimony. Accordingly, the defense objects to both proffered topics.

## Improper Overview Testimony

First, Agent Luca should not be permitted to give overview testimony regarding the futures market. The government has already conceded that overview testimony from an agent-expert witness is prejudicial. In its opening brief, the defense argued that overview testimony

April 11, 2018
Page 2

would be improper testimony from Agent Luca.  *See* Mem. of Law in Support of Def't Mot. in *Limine* to Preclude Special Agent Luca  (ECF No. 109) ("Motion") at 9.  The government responded to this argument by stating "Special Agent Luca is not testifying as an overview witness in this case. He will be testifying near the conclusion of the government's case-in-chief."  Gov't Opp. to Motions in *Limine* (ECF No. 137) at 15.  The government now reverses course and states that it *will* elicit overview testimony from Agent Luca.

Second, the government seeks to substitute Agent Luca for its previously noticed witness Daniel Driscoll relating to the topics on which Mr. Driscoll was expected to testify.  The defense was willing to consent to testimony on these topics from Mr. Driscoll,[1] as Mr. Driscoll works for an independent association and does not suffer from the improper influence of having investigated this case for the government, attended cooperator proffers, or having arrested Mr. Flotron. This certainly does not mean the defense consents to testimony on these topics were they to be offered by Agent Luca.[2]  For example, testimony regarding "canceling, modifying, and executing orders for futures contracts" and "speculation and hedging risk using futures contracts" would be improperly influenced by his investigation of this matter.  In addition, testimony regarding the broad topic of "supply and demand for futures contracts" could be used to mirror the government's materiality theory of the case by indicating that supply-side or demand-side pressure allegedly may cause a counterparty to execute a trade.  Bolstering the government's theory on materiality with a witness who has the imprimatur of the government would be unduly prejudicial.  *See* Motion at 9.

## Improper Testimony Regarding Exhibits

Additionally, the government has disclosed that it intends to offer forty-six (46) exhibits and "related testimony" through Agent Luca.  It offers no further information as to the scope of Agent Luca's testimony regarding these exhibits, and therefore falls short of complying with the Court's April 3 Order or providing sufficient basis to evaluate the proposed testimony.  Further, the government fails to specify whether this expected testimony is fact-based or expert testimony.

Defining the scope of Agent Luca's testimony is imperative with regard to his interpretations of communications.  Of the forty-six exhibits the government seeks to offer through Agent Luca, twenty-five are communications.[3]  The Court specifically addressed the issue of prejudice with regard to communications:

---

[1] The defense continues to note that this testimony is expert testimony, though it was willing to stipulate to these topics for Mr. Driscoll's testimony.  *See* Def't Reply in Support of Motion in *Limine* (ECF No. 154) at 10.

[2] At the March 29 pretrial hearing, the defense suggested that it would likely not object to certain topics from Agent Luca, such as "operational things," meaning "what it means to sit behind the keyboard and execute the trades. . . ." March 29, 2018 Tr. 21:14-16.  Defense counsel premised this compromise based on the government's indication that Agent Luca would testify near the close of trial.  However, the defense continues to have no objection to testimony such as identification of the exchanges, order types and terminology.

[3] These exhibits are GX027-33, 36(a), 45-47, 57(b), 60, 64, 68, 69(a), 72, 74, 76-82.

April 11, 2018
Page 3

> THE COURT: So basically I'd like to know, is he just interpreting a particular term or is he interpreting and giving some sort of broader conclusion about something about what is said in the chat. And then I think I can deal sensibly with the objection.

March 29, 2018 Tr. at 35: 6-10.  As the defense has noted:

> MR. MUKASEY: . . . Interpreting the chats, in my view, is the topic of testimony that is most susceptible to the dangers that the Second Circuit points out. The interpretation of chats is normally done from an objective point of view.

March 29, 2018 Tr. at 31:16-19.  Thus, the scope of the exhibit-based testimony regarding communications must be carefully circumscribed.

Nevertheless, whether the exhibit-related testimony is fact-based or expert testimony, the defense continues its objection.  If Agent Luca's testimony is factual testimony based on his knowledge of the investigation, Agent Luca's dual agent-expert role would give him "unmerited credibility" regarding any exhibit-related testimony.  *United States v. Mejia*, 545 F.3d 179, 196 (2d Cir. 2008) ("When case agents testify as experts, they gain unmerited credibility when testifying about factual matters from first-hand knowledge.") (internal quotations omitted). The Court indicated that it must carefully examine the nature of this dual role.  March 29, 2018 Tr. 41:14-19 ("THE COURT: . . .I do actually think that's material to my consideration of whether somebody should be called as an expert witness if they're essentially serving that dual role."). The government should not be permitted to use Agent Luca's status as an agent-expert to confer credibility on his fact-based testimony.

If the exhibit-related testimony is expert testimony, Agent Luca runs the dangerous risk of transmitting inadmissible hearsay because he would likely rely on witness interviews or the investigation to form the basis of his expert opinion. *Mejia*, 545 F.3d at 197 ("The expert may not . . . simply transmit that hearsay to the jury."); *see also* Motion at 6.  It strains the imagination to think that Agent Luca would be able to testify about these communications from an objective point of view.  Every communication identified by the government involves cooperating witnesses Kar-Hoe ("Mike Chan") and/or Sergio Soler, two alleged co-conspirators whose interviews Agent Luca attended.[4]  *See* Motion at 2; Def't Reply in Support of Motion in *Limine* (ECF No. 154) at 5.[5]  It is more likely than not that Agent Luca will rely, at least in part, on his knowledge drawn from witness interviews and investigation rather than his general expertise in interpreting these communications. *United States v. Dukagjini*, 326 F.3d 45, 55 (2d Cir. 2003) (holding that expert testimony is improper when the "conclusions appear to have been

---

[4] It is worth noting that the government concedes this is problematic, because originally it represented that it would only present chats in which no co-conspirator participated. March 29, 2018 Tr. 26: 13-14 ("MR. ZINK: The first is there may well be some of the defendant's chats that none of our cooperators are on.").  There would seem to be no valid reason for Agent Luca to testify regarding communications of Chan and Soler, who both received non-prosecution agreements and are expected to testify for the government during the trial.

[5] Since the defense has filed its Reply, Agent Luca has attended an additional witness interview with Sergio Soler. 3/26/2018 Gov't Interview Memo. for Sergio Soler.

April 11, 2018
Page 4

drawn largely from his knowledge of the case file and upon his conversations with co-conspirators, rather than upon his extensive general experience . . . "). It would be exceptionally difficult, if not impossible, for Agent Luca to divorce this knowledge and interpret these communications solely drawing on his expertise as a precious metals trader in a prior career many years ago.

     Accordingly, Agent Luca should be precluded from testifying as a dual agent-expert witness, and the defense continues its objection to the government's proffered testimony.

     Respectfully submitted,

     GREENBERG TRAURIG, LLP

By: /s/ Marc L. Mukasey
    Marc L. Mukasey (ct29885)
    Nathan J. Muyskens (phv09472)
    Daniel P. Filor (phv08911)
    200 Park Avenue
    New York, NY 10166
    Telephone: (212) 801-6832
    Facsimile: (212) 801-6400
    *Attorneys for Defendant Andre Flotron*

## AFFIRMATION OF SERVICE

I hereby certify that on April 11, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
April 11, 2018

 /s/ Marc L. Mukasey
Marc L. Mukasey
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: mukaseym@gtlaw.com