**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. ANDRE FLOTRON, *Defendant*. | No. 3:17-cr-00220 (JAM) |

**RULING RE PENDING MOTIONS IN LIMINE**

This is a criminal case about an alleged conspiracy to engage in commodities fraud involving the trading of precious metals futures contracts. The parties have filed numerous motions *in limine* with respect to testimony and documents that they expect to introduce at trial. I have heard extensive oral argument from the parties, and I now issue the following rulings with full consideration of the arguments and requisites of the rules and precedent cited by the parties.[1]

***Government's motion in limine re pre-conspiracy conduct (Doc. #107)***

The Government moves *in limine* to allow certain evidence of defendant's alleged "spoofing" activity that occurred in 2007 and 2008 prior to the beginning of the charged conspiracy in July 2008. This includes evidence of 11 trading transactions from January to June 2008, general "floor" talk about spoofing prior to July 2008, and a cooperator's testimony about a specific spoofing conversation with defendant that may have taken place shortly prior to the beginning of the conspiracy period. Doc. #179 at 69-76.[2] For substantially the reasons set forth in

---

[1] This ruling disposes of all pending motions *in limine* except for the Government's motion *in limine* to preclude evidence of defendant's good conduct and misconduct of non-coconspirators (Doc. #169).

[2] The Government's motion *in limine* (Doc. #107) also sought to preclude expert testimony regarding defendant's mental state and evidence or argument that would question the adequacy of the Government's investigation or motives in investigating and charging defendant. These aspects of the motion were denied as moot at the Court's hearing of March 29, 2018. Doc. #179 at 69.

the Government's briefing (Doc. #107 at 1-4) and at the hearing of March 29, 2018, I conclude that this evidence is proper background evidence for the jury's understanding of events occurring within the conspiracy period. *See United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999). Upon request at trial by defense counsel, I will instruct the jury as to such pre-July-2008 evidence that the jury may only consider this evidence as background evidence for their understanding of events that occurred during the conspiracy period.

### *Defendant's motion in limine to preclude testimony of Special Agent Luca (Doc. #108)*

Defendant has moved *in limine* to preclude the proposed testimony of FBI Special Agent Jonathan Luca (Doc. #108). In response to this motion, the Government has substantially revised the proposed testimony of Agent Luca (Doc. #187). For the reasons I stated during the teleconference of April 12, 2018, I will deny the motion to preclude Agent Luca's proposed testimony subject to the Government's representations about the limited scope of questioning (including not to query beyond very basic questions as proposed by the Government about price response to supply/demand or to query concerning reasons for a market order to be cancelled).

As to the documentary exhibits that the Government proposes to offer through Agent Luca, I conclude that the Government may do so in the manner proposed by the Government by which Agent Luca will testify essentially as a custodial witness and not about the contents of or interpretation of the content of exhibits.[3] In view of the revised limitations proposed by the Government concerning the scope and nature of Agent Luca's testimony, I do not agree with defendant that he will be unfairly prejudiced if Agent Luca is permitted to testify in a dual expert/fact witness capacity and that is subject to the limits I have described.

---

[3] At the April 12 teleconference of the parties, I asked the parties to attempt to resolve any disputes about the admissibility of the exhibits that the Government proposes to admit through Agent Luca and in light of what the Government believes was defendant's prior agreement not to object to these exhibits. The parties should advise me if a dispute with respect to this issue remains for me to resolve.

*Defendant's motion in limine to preclude undisclosed expert testimony (Doc. #110)*

Defendant has moved *in limine* to preclude any expert testimony from Government witnesses Lisa Pinheiro and Daniel Driscoll. I deny this motion as moot in light of the Government's representation that it will not elicit expert opinion testimony from either of these witnesses. I am not convinced that the numbers-crunching testimony of Lisa Pinheiro is expert testimony about which defendant has not received proper notice.

*Defendant's motion in limine re UBS compliance code and policies (Doc. #114)*

Defendant has moved *in limine* to preclude evidence regarding UBS compliance codes and policies (Doc. #114). The Government has now revised its proposed evidence to include solely certain pages from a UBS training module that defendant completed during the course of the conspiracy period (Doc. #177). Absent further objection to the Government's proposed revised exhibit, I will deny defendant's motion on the ground that it is relevant and appropriate for the Government to introduce evidence concerning defendant's training with respect to prohibited trading activities. Upon request by defendant, I will instruct the jury that any violation by defendant of UBS's own trading/compliance rules does not mean that defendant was in violation of law and that the jury should consider any training modules completed by defendant for the limited purpose of evaluating his state of mind with respect to any trading activities.

*Government's motion in limine re enactment of Dodd-Frank Act et al. (Doc. #185)*

The Government moves *in limine* to preclude defendant from introducing evidence of (a) the enactment in July 2010 of the Dodd-Frank Act's anti-spoofing provision, (b) the process by which the Commodity Futures Trading Commission (CFTC) has issued interpretive guidance about the provision, and (c) the publication in August 2014 by the CME Group of its own anti-spoofing rule. Doc. #185 at 1. Although it is true that defendant has not been charged with the

substantive crime of "spoofing," the conspiracy charge here is based on the Government's contention that defendant's spoofing activity amounted to commodities fraud. Any knowledge and intent of defendant and his co-conspirators about the legality of spoofing will be very significant disputed issues at trial.

In view of the professional market participant status of defendant and his co-conspirators, as well as the Government's intent to offer evidence concerning defendant's completion of a UBS compliance training module, I am convinced that the jury should also be permitted to consider that Congress specifically outlawed spoofing during the conspiracy period and the CFTC's issuance of guidance concerning the scope of the new law. It would be reasonable for the jury to conclude that defendant and his co-conspirators would be generally aware of legal and regulatory developments in their area of business expertise. Because it is the Government's burden to prove the culpable state of mind of defendant and his co-conspirators, the burden should not fall on defendant (as the Government argues) to testify or otherwise prove that he specifically read and reviewed the law and regulatory guidance.

Accordingly, for reasons I discussed at the April 12 teleconference, I will grant in part and deny in part the Government's motion *in limine*. I will deny the motion insofar as it seeks to preclude evidence of (1) the fact of enactment of and the text of the Dodd-Frank Act's anti-spoofing provision, and (2) the text of the CFTC's "Commission Guidance" concerning interpretation of this provision (Doc. #185-2 at 5, middle column "Commission Guidance" and right column through signature of CFTC chairman). On the other hand, I will grant the motion insofar as it seeks to preclude legislative history and public commentary associated with the passage of the Dodd-Frank Act and issuance of the Commission's guidance; in contrast to the statute itself and the Commission's official guidance, there is no reason to suppose that

defendant would have been aware of legislative history or public comments submitted to the Commission, and this evidence could be confusing and unfairly prejudicial for reasons stated by the Government.

I will otherwise grant the motion to preclude insofar as it seeks to preclude evidence of the publication by CME Group in August 2014 of its own spoofing rule; this post-conspiracy action by a third party is not relevant to the state of mind of defendant or his alleged co-conspirators during the charged conspiracy. Any party, however, may elicit evidence that the CME Group did not have an anti-spoofing rule during the conspiracy period. The absence of such a rule would be relevant to the jury's consideration of state of mind during the course of the conspiracy. My ruling as to this motion is without prejudice to reconsideration in scope in the event that defendant decides to testify at trial.

*Defendant's motion in limine re Government's summary exhibits (#193)*

Defendant moves *in limine* to preclude the Government from introducing certain summary exhibits (Doc. #193). Two of these summary exhibits (GX 126 and GX 127 with subsets) are charts depicting hundreds of trading sequences and related data relevant to the Government's contention that these sequences were spoofing episodes. I agree with the Government's argument that each of the requisites for admission under Fed. R. Evid. 1006 has been satisfied as to GX 126 and GX 127 (namely, that they have been adequately noticed and disclosed to defendant and accurately summarize admissible evidence that is too voluminous to conveniently present in court).

Most significantly, defendant has not identified in his motion or during the April 12 teleconference any factual inaccuracy in GX 126 and GX 127. Moreover, in view of the immense volume and complexity of the underlying trading data, a summary compilation of the

5

transaction data may be important to the jury's ability to understand the evidence and evaluation of the timing and details of trading activity. All summary evidence is inherently selective in terms of what data is included, and I do not agree with defendant's argument that the Government's decision to select certain series of transactions amounts to improper "cherry picking" that makes the summaries misleading or otherwise inadmissible. Defendant's concerns go to weight and not admissibility.

Nor do I agree with defendant's argument that the large number of trading sequences that are the subjects of GX 126 and GX 127 is cumulative and unfairly prejudicial. The Government has charged a long-running conspiracy, and it is appropriate for the Government to try to prove up through numerosity its contention that the co-conspirators engaged in spoofing transactions as a very common course of trading activity. Although it could choose to do so solely through the testimony of its cooperating witnesses, the Government has strong reason to seek to corroborate such testimony with evidence of actual trading activity. In addition, in order to promote judicial economy, the Government may—upon proper laying of a foundation—offer the full range of summaries in GX 126 and 127 through its compilation witness, Lisa Pinheiro, prior to the testimony of cooperating witnesses.[4]

As to defendant's objection concerning some of the argumentative terms that appear in some of the summary exhibits, the Government has agreed to change the term "worse" to "higher/lower" and to change the term "notional value" to "face value." I will also sustain defendant's objection to the title "Market Impact" as it appears in GX 146 and GX 147; because the data summarized in these exhibits does not self-evidently demonstrate any market impact (albeit the Government could permissibly argue from this data that there was market impact), the

---

[4] For similar reasons as I have explained for GX 126 and GX 127, I also overrule any similar objection to the summaries shown in GX 102 through GX 108.

6

title "Market Impact" is misleading in context. I otherwise conclude that the remaining terminology that appears in the summary exhibits is appropriate and not unfairly prejudicial.

As to defendant's objection to GX 145 to the extent that it includes a calculation of "Gain per Minute" and "Gain per Hour," I will sustain defendant's objection for substantially the reasons set forth in defendant's briefing and at the April 12 teleconference of the parties. The amount of extrapolated temporal gain per minute or per hour is a matter that can be argued by counsel and does not genuinely summarize or measure any fact of consequence to this case.

As to defendant's objection to demonstrative exhibits (GX 100 and GX 101), I will overrule the objection. Because of the complexity of the transaction at issue, I am satisfied that it is proper for the Government to have a witness use demonstrative visual evidence to explain the sequence of data. As discussed at the April 12 teleconference, the Government shall revise the title of these two exhibits to remove the terms "Spoofing Episode" and to substitute a different number other than "33" for the number of large-number contracts at issue. To the extent that other summary exhibits have headings that use the term "Episode," the Government should replace this term with a less argumentative term such as "Sequence" or "Series." If the parties believe that there are any other objections to the Government's summary exhibits that are not addressed by this ruling, they should promptly raise the matter with the Court at trial.

### *Scope of cross-examination of Kar-Hoe "Mike" Chan*

For reasons stated on the record at the hearing of March 29, 2018, I have previously granted defendant's motion *in limine* to preclude evidence in the Government's case-in-chief of defendant's alleged "front running" trading activity (Doc. #140). In light of the fact that defendant has been charged with spoofing but not front-running activity, I concluded that such evidence of his other alleged wrongs was not properly admissible at trial pursuant to Fed. R.

Evid. 404(b) unless defendant were to open the door to the admission of such evidence. Doc. #179 at 100-01.[5]

This ruling in turn led to a dispute about whether evidence of defendant's front-running activity would be a proper subject for the Government's re-direct examination of cooperating witness Mike Chan in the event of defendant's anticipated cross-examination of Chan concerning his personal participation in other allegedly fraudulent or manipulative trading activity (whether or not labeled as "front running" activity). According to what the parties tell me, this additional activity took place after Chan moved to a UBS trading desk in Singapore from the UBS trading desk in Connecticut where he and defendant had worked directly with each other. Defendant argues that he should be able to impeach Chan with his additional dishonest conduct, because it goes to his motive to cooperate with the Government and to his general credibility. The Government does not dispute that this is proper impeachment but contends that on re-direct examination (or possibly for preemptive purposes during direct examination) it should be permitted to elicit from Chan that he was "schooled" by Flotron in the kinds of improper techniques he later used while in Singapore. Defendant objects, contending that this is simply a back-door way of the Government's introduction of evidence otherwise prohibited under Rule 404(b).

I agree with defendant. The fact that Chan may have been "schooled" by defendant to engage in additional fraudulent techniques is not relevant to the impeachment purposes for which defendant seeks to cross-examine Chan: to show his motives and past dishonesty. Even if it was defendant who taught him how to be dishonest, this doesn't undermine the impeachment value of

---

[5] Spoofing involves manipulation of market prices by placing a market order with the intent to cancel it, while front-running activity generally involves placing a private market order on the basis of knowledge about a client's soon-to-be placed market order. *See, e.g.*, Liz Moyer, *How Traders Use Front-Running to Profit from Client Orders*, N.Y. Times, July 20, 2016, *available at* https://nyti.ms/2nEw8fR (last accessed Apr. 15, 2018).

the proposed cross-examination or tend to rehabilitate Chan's credibility as a witness. *See United States v. Phillips*, 599 F.2d 134, 137 (6th Cir. 1978) (reversing conviction of bank robbery defendant where prosecution elicited from cooperating witness on re-direct examination that defendant had taken part in three additional uncharged bank robberies perpetrated by the cooperating witness).

The Government argues that "evidence that Mr. Flotron taught Mr. Chan to front run *directly* rebuts the inference that Mr. Chan was a rogue trader who committed crimes on his own." Doc. #196 at 2. But the same argument could have been made by the prosecution in *Phillips*—that it "needed" to elicit from the cooperator the fact that the defendant had robbed three more banks in order to rebut any inference that the cooperating witness was some kind of a rogue bank robber who acted on his own. I think defendant is entitled to impeach Chan with his other allegedly fraudulent activity, and the price for legitimately doing so should not be to have to defend against evidence of uncharged wrongdoing. Even assuming some probative value to showing that Chan was not a rogue trader, the capacity for unfair prejudice from injecting uncharged front-running activity by defendant into this case substantially outweighs the probative value.

The Government further argues that the front-running evidence "is crucial to the jury's understanding of the dynamic between Mr. Chan (a junior trader) and the defendant (his supervisor)." Doc. #196 at 2. I do not agree that it is crucial. The Government may establish the nature of the master/apprentice supervisory relationship without delving into uncharged wrongdoing by defendant.

Of course, the fact that I will preclude the Government from eliciting evidence of defendant's alleged front-running activity does not allow defendant to argue—whether directly

9

or by implication during the cross-examination of witnesses, his testimony, or in closing arguments—that he did *not* personally engage in or instruct others about how to engage in front-running activity. If defendant opens the door in this manner, then the Court will reconsider its order of preclusion and/or take other appropriate corrective measures.

### CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part the pending motions *in limine* as detailed in this ruling (Docs. #107, #108, #110, #114, #185 and #193). The Court re-affirms its prior ruling barring evidence of defendant's uncharged "front-running" misconduct absent a further basis to conclude that defendant has opened the door to this evidence.

It is so ordered.

Dated at New Haven this 15th day of April 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge