UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff*, | |
| v. | No. 3:17-cr-00220 (JAM) |
| ANDRE FLOTRON,<br>    *Defendant*. | |

**AMENDED ORDER DISMISSING COUNTS TWO THROUGH SEVEN OF THE SUPERSEDING INDICTMENT WITHOUT PREJUDICE AND DENYING LEAVE OF COURT FOR DISMISSAL OF COUNT ONE OF THE SUPERSEDING INDICTMENT**

This is a criminal case about allegedly fraudulent transactions involving the trading of precious metals futures contracts. The principal issue now before me is about where and when this case will be tried. Having detained and confined defendant away from his home country of Switzerland, the Government would like to break its agreement to proceed with a speedy trial in Connecticut so that it may pursue more charges and an eventual trial someday in Illinois. I conclude that a speedy trial should proceed here in Connecticut on the schedule previously agreed to by the Government.[1]

### BACKGROUND

Defendant Andre Flotron is a citizen and resident of Switzerland. On September 13, 2017, while visiting his girlfriend in the United States, he was arrested in New Jersey on a federal criminal complaint that issued from the District of Connecticut. The complaint alleged

---

[1] The Court vacates its prior ruling (Doc. #81) and issues this amended ruling that is the same as my initial ruling except that it removes my prior finding that the Government acted in bad faith by seeking to delay and move the trial of defendant to Illinois. Any finding of bad faith is no longer necessary in light of the Government's determination not to seek mandamus or other expedited interlocutory appellate review of my initial ruling. A jury trial on the conspiracy charge proceeded before me as scheduled, and the jury acquitted defendant of the charge. The Government stated at trial that it does not intend to pursue further charges against defendant.

defendant's violation of federal criminal laws including conspiracy, wire fraud, commodities fraud, and "spoofing" between July 2008 and November 2013.[2] The charges stemmed from allegedly fraudulent or manipulative practices by defendant while he was employed as a precious metals trader for UBS AG, one of the largest global banking and financial services companies in the world.

Defendant was jailed from his arrest until after his transfer to Connecticut and his eventual release on October 2, 2017. He was released on a $4 million bond and strict conditions of home confinement with GPS monitoring at a residence of a custodian in New Jersey. Doc. #10. In the meantime, on September 26, 2017, a federal grand jury in Connecticut returned a one-count indictment charging defendant with a multi-object conspiracy to commit wire fraud, commodities fraud, and spoofing "in the District of Connecticut and elsewhere." Doc. #14 at 4-5.

On October 5, 2017, I held an initial status conference with the parties. The Government described how defendant was a Swiss citizen and how it had seized upon the opportunity to arrest him when it learned that he was in the United States: "he was arrested on a complaint because we didn't want to lose him," and "[o]nce he's in Switzerland, we have no effective extradition, realistic extradition possibility." Doc. #30 at 6. According to the Government, it had discussed with defense counsel its intent to supersede the conspiracy indictment to add substantive counts, "but the conduct is all the same conduct that's sort of contemplated now in the existing indictment," and "[i]t's not going to extend discovery." *Ibid.*

Defense counsel stated that "[f]rom our point of view, we do want a trial as early as possible, but with enough time to review what is a complex discovery set that I anticipated we're

---

[2] The Government defines "spoofing" to be "a term for the practice of bidding or offering futures contracts with the intent, at the time the bid or offer is placed, to cancel the bid or offer before it is filled." Doc. #14 at 3 (¶ 9).

2

getting." Doc. #30 at 9. The Court and parties agreed to convene again in 30 days for a scheduling conference.

On November 6, 2017, the Court held a telephonic conference with the parties to discuss scheduling matters. I told the parties that I would like to set a "realistic trial date that would not move" and that "I don't think that the government has a free hand to essentially keep superseding on the brink of trial and to upset that trial date schedule." Doc. #38 at 9. The Government assured me that's not what it was going to do: "it's not our intention to supersede on the brink of trial" and that "*we have no interest in moving the trial date once it's set*." *Ibid.* (emphasis added). It further stated that "we would like to supersede in December, but frankly it's just a question of scheduling with the grand jury," and "[i]f we're not able to get in towards the end of December, then certainly we believe by January." *Ibid.*

The Government then explained how its seeking the return of a superseding indictment would not end up prejudicing defendant because the evidence would remain essentially the same:

> As we said when we were together in person, *we don't actually think superseding changes the shape of this trial at all*. Whether we proceeded on this indictment or the [superseding indictment] that we're working towards, *we think the trial will likely be the same*. Either way, it will charge a scheme. And maybe there might be some specified allegations about what are the instances of that scheme being executed, but either way, *the evidence will be the same, the discovery will be the same, the theory of the case will be the same*.

*Id.* at 9-10 (emphasis added).

Defendant through his counsel did not oppose the Government's seeking the return of a superseding indictment but advised that he wished to proceed to trial as soon as possible in light of his restrictive conditions of confinement:

> MR. MUKASEY: I'll tell you, I want to remind the Court, briefly, my client is on house arrest with an ankle bracelet confined to his girlfriend's home largely other than lawyer visits and medical visits and church visits and is, you know, locked down by Pretrial

>Services. We're happy that we reached a bail agreement, but we'd like to have this case heard as soon as we can.

*Id.* at 18. After further discussion, I decided with the agreement of all parties to schedule this case for jury selection on April 6, 2018. For its part, the Government subsequently filed a motion to adopt a detailed pretrial discovery and motions schedule, all leading up to jury selection and trial in early April as agreed. Doc. #42.

On December 4, 2017, I held another scheduling conference in person with the parties. There was no indication at that time that the Government intended to abandon the trial schedule or start charging defendant with crimes beyond Connecticut. I asked the Government for an estimate when it would file a superseding indictment and whether the Government had spoken to defense counsel "about the scope of [the] anticipated superseding" indictment and to see "if it's going to be a surprise to Mr. Mukasey [defense counsel]." Doc. #47 at 4. The Government responded that "[g]enerally we've spoken about the fact that the government will allege specific instances of spoofing, so particular counts in addition to the conspiracy charge." *Ibid.* The Government later added that "when we supersede, there will be the individual counts which will be charged, for instance, as Title [7] spoofing, right, *but that's just part of the conspiracy*," and "[t]he larger conspiracy includes this much larger universe where Mr. Flotron is spoofing on a regular basis." *Id.* at 13 (emphasis added). Defense counsel re-affirmed that defendant and the defense team were still "committed" and "locked in" to proceeding to trial in April on the dates set forth by the Court. *Id.* at 5.

On January 30, 2018, the Government secured the return of a seven-count superseding indictment. Count One of the superseding indictment alleges a long-running conspiracy from July 2008 to November 2013 to commit commodities fraud, in violation of 18 U.S.C. § 1349. The rest of the superseding indictment includes six substantive counts. Counts Two through Four

4

allege three sets of transactions on specific dates in June 2012, February 2013, and November 2013, each constituting the alleged execution of a scheme to engage in commodities fraud, in violation of 18 U.S.C. § 1348. Counts Five through Seven cite the same three sets of transactions in June 2012, February 2013, and November 2013, but allege they constitute illegal spoofing transactions, in violation of 7 U.S.C. § 6c(a)(5)(C) and § 13(a)(2). All of these substantive charges involve transactions within the temporal scope of the conspiracy charged in Count One, and these particular transactions are a subset of many more transactions about which the Government may adduce evidence at trial over the five-year conspiracy period. Doc. #47 at 13-21.

      No one was surprised by the Government's new charges but the same could not be said for its new allegations about venue. The conspiracy in Count One is alleged to have occurred "in the District of Connecticut and elsewhere." Doc. #58 at 4 (¶ 12). By contrast, all six of the substantive counts are alleged to have occurred wholly outside Connecticut "in the Northern District of Illinois," *id.* at 7-8 (¶¶ 23, 25), a venue that corresponds to the location of the commodities exchange in Chicago. As the Government explained at oral argument, it had no basis to lay venue for any of the substantive counts in Connecticut, because these transactions took place after defendant had relocated from the UBS trading desk in Connecticut to the UBS trading desk in Switzerland from where he engaged in the charged substantive transactions involving the Chicago commodities exchange.

      It is highly unusual for a grand jury in Connecticut to return an indictment charging a crime for which there is no proper trial venue in Connecticut. Federal grand juries in Connecticut don't ordinarily indict bank robberies in Boston, kidnappings in Kansas, or drug dealing in Dallas. At no time prior to the return of the superseding indictment did the Government advise

defendant or the Court that it had launched a novel plan to put defendant on trial in Connecticut for felony crimes of commodities fraud and spoofing that had nothing to do with Connecticut.

Understandably enough, defendant reacted by moving to dismiss the substantive counts with prejudice on grounds of improper venue and contending that the Government had acted improperly by effectively coercing him to waive his constitutional right to venue in exchange for keeping to the agreed-upon April trial date. The Government agreed that—in the absence of defendant's consent to waive a venue objection—the substantive counts should be dismissed but should be dismissed without prejudice. In addition, if defendant were unwilling to waive venue for the substantive counts, the Government moved to dismiss the remaining conspiracy count without prejudice pursuant to Fed. R. Crim. P. 48(a) so that the Government might re-file all of the charges in the Northern District of Illinois.

## DISCUSSION

The Constitution guarantees the right of a criminal defendant to be tried in the state or district where an alleged crime was committed. *See* U.S. Const. Art. III, § 2, cl. 3 ("The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; . . . ."); U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, . . . ."); *see also United States v. Cabrales*, 524 U.S. 1, 6 (1998).

Because defendant is unwilling to waive his right to venue in the Northern District of Illinois, the parties agree that I must dismiss the substantive counts of the superseding indictment. What they disagree about is whether I should do so with prejudice.

Defendant argues that it was improper for a federal grand jury in Connecticut to return an indictment for crimes that occurred wholly outside Connecticut in the Northern District of Illinois. Indeed, it is the usual rule or practice that "a grand jury should return an indictment only in a district where venue lies" and that "[o]therwise, the resulting indictment can be dismissed for lack of trial venue." *United States v. Cessa*, 856 F.3d 370, 372 (5th Cir. 2017). Federal prosecutors are instructed as a matter of policy not to ask their local grand juries to indict faraway crimes. *See* U.S. Attorney's Manual § 9-11.121 ("A case should not be presented to a grand jury in a district unless venue for the offense lies in that district.").

All that said, it's far from clear that the Constitution forbids a grand jury from charging crimes outside its territorial jurisdiction. The Constitution expressly protects the right of a criminal defendant *to be tried* only in the state or district where the alleged crime was committed, but it has nothing to say about whether a criminal defendant has an additional right not *to be charged* except by a grand jury of the state or district where the alleged crime occurred. *See Cessa*, 856 F.3d at 372 (declining to decide "whether the Constitution limits a grand jury to indicting only crimes occurring in the district where it is convened").

I don't need to answer this question because defendant has not argued that the Government violated the Constitution when it asked the grand jury in Connecticut to return an indictment on charges for which venue lies only in the Northern District of Illinois. Instead, defendant argues that the Government's decision to proceed as it did has coerced him to waive his constitutional venue rights as to six of the seven counts of the superseding indictment as a price for retaining his right to proceed to an expeditious trial in April.

I agree that this is what the Government has done. But in the absence of a claim that the Government's venue-deficient charges alone have violated defendant's constitutional rights, I

don't think the appropriate remedy is to dismiss the substantive counts with prejudice. An order dismissing the substantive counts *without prejudice* redresses any harm to defendant from the Government's decision to charge crimes for which he could be tried only if he agreed to waive his venue rights.

Indeed, defendant does not have a right *not* to be charged and tried on charges in the Northern District of Illinois or any other district for which there is proper venue. If I were to dismiss the substantive counts with prejudice as defendant would like, the remedy would far exceed any harm to defendant from having had the charges leveled but dismissed against him here in Connecticut. Accordingly, I will dismiss Counts Two through Seven without prejudice.

That brings me to the Government's corresponding motion to dismiss without prejudice the remaining conspiracy count so that the Government may re-indict defendant on this charge along with substantive charges in the Northern District of Illinois. Rule 48(a) of the Federal Rules of Criminal Procedure provides that the Government "may, with leave of court, dismiss an indictment, information, or complaint." The Supreme Court has explained that, although the "leave of court" requirement "obviously vest[s] some discretion in the court," the "principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977); *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 141 (2d Cir. 2017). The Second Circuit has "suggested (in dictum) that any authority a court might have to deny a Rule 48(a) motion would be limited to cases in which dismissal is 'clearly contrary to manifest public interest.'" *Ibid.* (quoting *United States v. Pimentel*, 932 F.2d 1029, 1033 n.5 (2d Cir. 1991)).

8

I think it would be clearly contrary to the manifest public interest to allow the Government to break its agreement to proceed to trial in April so that it may start the prosecution all over again on a blank slate with new charges in the Northern District of Illinois. The Government long ago committed not to return a superseding indictment that would jeopardize the firmly established date for trial in Connecticut. While defendant has languished in jail and now in highly restrictive conditions of "home" confinement far from his real home in Switzerland, the Government had months upon months to decide how it would frame a superseding indictment.

Although the Government now claims that "in good faith [it] believed that Connecticut would also have venue over substantive counts of spoofing and commodities fraud that would come as a part of a superseding indictment," Doc. #78 at 2, the Government long ago knew that defendant had moved his trading operations from Connecticut to Switzerland. Indeed, the initial indictment from September 2017 alleged that defendant "worked on UBS's Stamford trading desk *before moving to its Zurich trading desk*." Doc. #14 at 1 (¶ 3) (emphasis added). The Government was on obvious notice that after defendant left Connecticut for Switzerland there might no longer be venue in Connecticut for the charging of later substantive transactions. And the Government was on obvious notice of this venue complication when it gave its word on November 6, 2017, that it would be ready to proceed to trial in April 2018 and that its return of a superseding indictment would not jeopardize this commitment.

As the months went by and despite ample opportunity to do so (and even despite dodging my query whether there would be a "surprise" in the new indictment), the Government gave no advance notice or indication that it would seek to move this case to Illinois or, alternatively, that it would be willing to proceed in Connecticut only if defendant would sacrifice his constitutional

9

venue rights. Instead, the Government waited to the last days of January to spring the new venue-defective indictment *fait accompli*. It left the defendant to waste valuable time and resources as trial fast approaches to seek relief from the Court just to protect his basic constitutional venue rights.

Speedy trial interests are also at stake. It is well recognized that it is not only a criminal defendant who may have an interest in a speedy trial but the public as well. *See, e.g.*, *Zedner v. United States*, 547 U.S. 489, 500-01 (2006). Based on the parties' agreement to proceed to trial in April, the Government filed a motion for me to exclude the time from November 2017 to April 2018 for purposes of the Speedy Trial Act. Doc. #39. Although I granted that motion on the grounds of the public interest (Doc. #40), I can't say that I would have done so had I known that the Government reserved to itself the option to delay and move the trial for its strategic interests.

The record does not show why the public interest requires delay of the trial so that the Government may pile on more charges against defendant. The conspiracy charge encompasses all of the transactions that are the subject of the substantive counts, and it appears that all of the evidence that would be introduced to support the substantive counts would already be fully admissible in support of the conspiracy charge. The alleged scheme and artifice to defraud that underlies the substantive commodities fraud charges (Counts Two through Four) is nothing but a cut-and-paste of the alleged scheme and artifice to defraud that supports the conspiracy charge. *Compare* Doc. #58 at 4 (¶ 12) *with id.* at 6-7 (¶ 22). The alleged "manner and means" of the charged conspiracy includes acts (that defendant and co-conspirators "placed Trick Orders for precious metals futures contracts . . . with the intent, at the time they entered the orders, to cancel

Case 3:17-cr-00220-JAM   Document 216   Filed 04/25/18   Page 11 of 14

before execution") that are the very definition of spoofing as alleged for the spoofing charges (Counts Five through Seven). *Compare* Doc. #58 at 5 (¶ 14) *with id.* at 8 (¶ 25).

In short, the Government does not need to delay and move the trial halfway across the country in order to ensure that it can present the full range of evidence that a jury should have to decide if defendant acted to defraud. A court should "not be content with a mere conclusory statement by the prosecutor that dismissal is in the public interest, but will require a statement of reasons and underlying factual basis," and a "court should be satisfied that the reasons advanced for the proposed dismissal are substantial." *United States v. Ammidown,* 497 F.2d 615, 620 (D.C. Cir. 1973).

Here, the Government's reasons are not substantial. As best as I can tell, the Government's real wish is to decorate its broad conspiracy charge with baubles of substantive charges that serve little or no function other than to run up defendant's sentencing exposure beyond the 25 years of imprisonment that he already faces if convicted on the conspiracy charge alone. And if the Government is concerned that the conspiracy charge won't necessarily require a jury determination of the criminality of specific transactions, the Government is free to request special interrogatories at trial.

The Government points to the interests of judicial economy—that it is better to have a single trial on all charges in Illinois than one trial on the conspiracy charge in Connecticut and a later trial on the substantive charges in Illinois. That argument is not persuasive, because it assumes that the Government would elect to pursue substantive charges in Illinois no matter what the outcome of the conspiracy trial in Connecticut, despite the fact that the very same evidence would have been presented and passed upon in the conspiracy-count trial as would be presented in a later substantive-counts trial. Moreover, the argument proves too much, because

even if a trial went forward in Connecticut as the Government would like on all of the conspiracy and substantive counts, the Government would still be free to pick any number of additional transactions to charge one day as substantive counts in Illinois, because—according to the Government—"[t]he larger conspiracy includes this much larger universe where Mr. Flotron is spoofing on a regular basis" on a "magnitude [of] about a thousand" transactions. Doc. #47 at 13. The reality is that the Government is already at liberty to multiply the number of proceedings regardless whether I allow the Government to renege on its promise to proceed to a speedy trial as it agreed in Connecticut.

I don't doubt for a moment the Government's right to charge substantive charges in conjunction with an overarching conspiracy. That's the Government's usual playbook. But the issue here is its "right" to belatedly add such substantive charges in violation of its agreement to proceed to a speedy trial in the venue that the Government itself chose for prosecution.[3]

The Government misplaces its reliance on *United States v. Crutch*, 461 F.2d 1200 (2d Cir. 1972), a case in which the court of appeals reversed a judge's denial of a Rule 48 motion where "at no time did Crutch or his counsel claim any prejudice would result from a short delay or a dismissal" for the Government to re-file new charges. *Id.* at 1202. Here, by contrast, defendant justifiably claims prejudice from having to wait longer for trial and also having to move to Illinois for trial. Although the Government contends that it will promptly seek to file new charges, the new charges would reset the clock for purposes of the Speedy Trial Act, and

---

[3] The Government relies on *United States v. Doody*, 2002 WL 562644 (S.D.N.Y. 2002), in which the court granted the prosecution's motion to dismiss its indictment in an insider trading case after the prosecution discovered on the eve of trial that there was no venue for any of the charges in the Southern District of New York; a decision not to grant the motion in that case would have been contrary to the manifest public interest because it would have terminated any prosecution of the defendant. Here, by contrast, venue is proper in the District of Connecticut for the conspiracy charge, and the conspiracy charge encompasses all of the transactions that are alleged in the substantive counts.

defendant has little assurance how expeditiously the case would be handled once it landed and was assigned somewhere in Chicago or elsewhere in the Northern District of Illinois.

I conclude that it would be contrary to the manifest public interest to allow the Government at this late date to abandon its case in Connecticut so that it may reload and re-file against defendant in Chicago. The public and the defendant alike have an interest in a speedy trial. The public and the defendant alike have an interest in the Government keeping faith with its commitment to proceed to trial in April in Connecticut.

Although I think the controlling legal standard for purposes of Rule 48(a) is whether dismissal of the charge would be contrary to the manifest public interest, the Government urges a different standard: whether its prosecutors have acted in *bad faith* by seeking dismissal of the conspiracy charge. Doc. #78. There is no "bad faith" requirement in the text of Rule 48(a). Nor is there a ruling of the Supreme Court or the Second Circuit that strictly conditions the denial of a Rule 48(a) motion on a court's threshold finding of prosecutorial bad faith, and the Second Circuit has recently reserved ruling on this issue. *See HSBC Bank USA*, 863 F.3d at 141 (noting that some courts have "severely cabined" the "public interest" inquiry to equate with "bad faith," while "[o]thers have emphasized that a court deciding a Rule 48(a) motion should not serve merely as a rubber stamp for the prosecutor's decision") (internal quotation marks omitted).

I think that evidence of prosecutorial bad faith may be relevant to a decision whether to deny a Rule 48(a) motion but that it should not be the *sine qua non* of such a motion where it is otherwise clear that the Government's reasons for seeking to dismiss and re-charge are not substantial and where the prejudice to the defendant and public interest supports holding the Government to its commitment to proceed. Nor is it my preference to delve into prosecutors' subjective motives, especially where the harm to the rights and interests of the defendants and

the public are all the same. Indeed, if the prosecutors' bad faith is to be the measuring stick for a Rule 48(a) motion, then I suppose that courts should take formal testimony from each of the prosecutors involved to make factual findings about his or her state of mind.

In any event, I need not decide for purposes of this amended ruling whether the Government has acted in bad faith, because I conclude that dismissal of the charge would be contrary to the manifest public interest. The Government committed to the Court and defendant that it would be prepared to proceed to trial in April in Connecticut. Rather than seeking to dismiss for re-prosecution some day in Illinois, the Government should keep its word.

## CONCLUSION

Defendant's motion to dismiss Counts Two through Seven of the superseding indictment is GRANTED without prejudice. The Government's motion pursuant to Fed. R. Crim. P. 48(a) to dismiss without prejudice Count One of the superseding indictment is DENIED.

It is so ordered.

Dated at New Haven this 25th day of April 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge